United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
No. 97-1673

Lafayette Canada,         \*

                         \*

        Appellant,       \*

                         \*   On Appeal from the United

     v.                   \*   States District Court for

                         \*   the Eastern District of

                         \*   Missouri.

Union Electric Company,      \*

                         \*

        Appellee.        \*

_____

Submitted:  September 12, 1997
Filed:  November 10, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, HEANEY and BEAM, Circuit Judges.

_____

RICHARD S. ARNOLD, Chief Judge.

Lafayette Canada, an African-American employee of Union Electric Company, claims the company failed to promote him to the position of gardener because of his race.  He appeals the order of the District Court granting summary judgment for Union Electric.  The District Court held that there were no genuine issues of material fact with respect to Union Electric's legitimate, nondiscriminatory reason for its failure to promote Mr. Canada.  The key issue is whether Mr. Canada passed an oral examination necessary to secure the promotion.  Union Electric's evidence is that he did not.  We hold that the plaintiff submitted sufficient evidence to the contrary to create a genuine

issue, and we therefore reverse the judgment of dismissal and remand for further proceedings.

I.

Mr. Canada was hired by Union Electric in 1989 as a janitor. He was later promoted to the position of porter. While working as a porter, Mr. Canada bid on open positions as a gardener in the company's forestry department. To become a gardener, an applicant must have a high-school diploma or its equivalent; three years' experience in landscaping and planting work; a thorough knowledge of lawn care, gardening, planting, and landscaping; and good physical strength and endurance. Once supervisors in the forestry department have determined that a bidder is eligible, a test is given to determine whether he or she has the requisite knowledge of lawn care, gardening, planting, and landscaping. The test was originally written, but was later changed to an oral examination, and was later still returned to its original, written format. If the bidder passes the test, he or she is offered the position.

Mr. Canada sought a gardener position in 1989, 1994, 1995, and 1996. On each occasion, supervisors in the forestry department deemed Mr. Canada eligible to take the test. He took oral tests in 1989 and 1994 and written tests in 1995 and 1996. He was informed each time that he failed the examination. In 1994, Mr. Canada filed a grievance with his local union. Later that year, he filed a complaint with the Equal Employment Opportunity Commission (EEOC) and the City of St. Louis Civil Rights Enforcement Agency, alleging that the examinations had been used by the company to discriminate against him because of his race. Both agencies investigated the charge and found no discrimination. The EEOC issued a right-to-sue letter, and Mr. Canada filed this case in a state court in 1995. Union Electric removed the case to the District Court. Following discovery, Union Electric filed a motion for summary judgment. The District Court held there were no genuine issues of material fact and granted summary judgment in Union Electric's favor.

## II.

We review a grant of summary judgment de novo. <u>Stevens v. St. Louis University Medical Center</u>, 97 F.3d 268, 270 (8th Cir. 1996). Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. <u>Roxas v. Presentation College</u>, 90 F.3d 310, 315 (8th Cir. 1996). In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. <u>Buller v. Buechler</u>, 706 F.2d 844, 846 (8th Cir. 1983). The party opposing the motion for summary judgment should then set forth specific facts in the record sufficient to raise a genuine material issue for trial. See <u>Ruby v. Springfield R-2 Public School District</u>, 76 F.3d 909, 911 (8th Cir. 1996). In the present case, plaintiff did not file any opposition to defendant's motion for summary judgment, but we believe, nevertheless, that the District Court was correct in not treating this non-response as itself sufficient to dispose of the motion. When a motion would be dispositive of the merits of the cause if granted, courts should normally not treat a failure to respond to the motion as conclusive. They should, instead, as the District Court did here, proceed to examine those portions of the record properly before them and decide for themselves whether the motion is well taken. In the present case, defendant's motion for summary judgment was accompanied by certain portions of the record, which the District Court examined. On appeal, we limit our examination to those same portions of the record, not taking into account other parts of the record that plaintiff now, belatedly, calls to our attention.

## III.

We have recently had occasion to re-state the standards for determining whether there is sufficient evidence to create a triable issue of fact in employment-discrimination cases. In Maschka v. Genuine Parts Co., 122 F.3d 566 (8th Cir. 1997), we said:

> We recently considered the precise contours of this issue in our en banc decision, Ryther v. KARE 11, 108 F.3d 832 (8th Cir.), cert. denied, 117 S.Ct. 2510 (1997). The holding of that case may be summarized as follows: if a prima facie case is made, and if the plaintiff offers evidence tending to show that the defendant's proffered reasons for its decisions were not the real reason, then the jury may decide the case, unless the "evidence of pretext . . . is, standing alone, inconsistent with a reasonable inference of age discrimination." Id. at 837 . . .. Once an age-discrimination plaintiff has done as much as [this], a jury may (but need not) find for him. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993). ("[R]ejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination, and . . . 'no additional proof of discrimination is required'" (footnote and citation omitted)) (emphasis added).

122 F.3d at 571. We now apply this standard to the case before us.[1]

_____

[1]As the Ryther en banc opinion explains, there is an exception to this general rule where the evidence of pretext is itself inconsistent with a finding of intentional discrimination, as, for example, the plaintiff's evidence was in Barber v. American Airlines, Inc., 791 F.2d 658 (8th Cir.), cert. denied, 479 U.S. 885 (1986). Accord, Rothmeier v. Investment Advisors, Inc., 85 F.3d 1328, 1337-38 (8th Cir. 1996) (plaintiff could not use evidence that he was actually fired because he threatened to investigate securities-law violations as proof of pretext to support finding of age discrimination); Maschka, supra, 122 F.3d at 571 n.3.

We first consider whether Mr. Canada made a prima facie case. In order to make such a case in failure-to-promote situations, a plaintiff must show that (1) he is a member of a protected group; (2) he was qualified and applied for a promotion to an available position; (3) he was rejected; and (4) similarly situated employees, not part of the protected group, were promoted instead. Plaintiff has shown the first, third, and fourth requirements from this list. Defendant disputes whether plaintiff was qualified (not whether he applied), but the question of his qualifications is precisely the same, in factual terms, as the issue raised by defendant's proffered justification: that is, that Mr. Canada did not pass the test. The case before us, therefore, comes down to this: was there a genuine issue of material fact as to whether Mr. Canada passed the test?

Plaintiff does not dispute the assertion that he failed the written tests given in 1995 and 1996. With respect to the 1989 oral test, the District Court held that the plaintiff had failed to exhaust his administrative remedies, because he filed his EEOC complaint too late. We agree with this holding. The question whether plaintiff passed the 1994 oral test, however, remains, and we now focus on this issue.

Two supervisors in the forestry department, Dan Albanello and Ray Wiesehan, administered the test. The test was made up of 17 questions. To pass, Mr. Canada was required to answer at least 12 questions correctly. While there is no physical evidence of the content of Mr. Canada's answers, Union Electric did produce a copy of Mr. Wiesehan's scoring sheet. Mr. Wiesehan marked six of Mr. Canada's answers as correct. Mr. Albanello used a scoring sheet too, but he did not keep it. He did, however, testify in his deposition that he marked four of Mr. Canada's answers as correct.

Mr. Canada stated in his deposition that he believes he passed the test because he knew his answers were correct and because he studied for the test. His testimony, however, went beyond such generalities. We believe the following excerpts from Mr. Canada's testimony are instructive. Union Electric supplied them to the Court along with its motion for summary judgment:

Q: Were there any answers in the '94 interview that you believe you were not given credit for, that is you answered the question but they didn't give you credit for your answer?

A: Yes.

Q: And why do you believe that?

A: I'm trying to remember the documents. I believe yes.

Q: Do you know how many questions that was?

A: No.

Q: Do you know what the questions related to?

A: No, I don't remember.

Q: Why do you believe that you answered correctly but you weren't given credit?

A: Just from remembering because I felt pretty sure that I had answered the questions correctly.

Q: How did you know that they didn't give you credit for that?

A: Through the grievance procedure.

Q: What do you mean?

A: When we had a meeting with the company and the union representative and myself and other witnesses, they expounded on this.

Q: How?

A: At various steps that led up to this.

Q: Okay. But how did you find out -- I mean how is it that you found out that you weren't given credit for correct answers? I mean did someone tell you? Did you look at documents?

A: I looked at documents.

Q: Okay. What documents were those?

A: The test.

Q: The test, the questions?

A: The test questions and answers, the test that I took. We are talking about '94, correct?

Q: '94.

A: Yes.

Q: So you looked at a copy of the test questions?

A: After taking the test, I looked at a copy of the test questions that they were asking me in comparison to the answers that he said that I gave.

Q: What was the last part?

A: In comparison to the answers that he said I had given.

Q: Let me see if I understand. Was there something that had your answers written down on it?

A: No, the questions that he gave and --

Q: And the correct answers from the company?

A: Yes.

Q: Okay. So you saw the questions and you saw the answers from the company, right?

A: No, the answers that -- the notations that he had made saying that I had not answered that question.

Q: Okay. So you looked at a copy of the questions and then there were some notations on there about which ones you didn't answer correctly; is that it?

A: Along with the questions that he never asked me.

Q: So there were some questions on the sheet you saw that he never asked you?

A: Yes.

Q: Okay. Who gave you this copy of the questions?

A: This was presented to the union by the company, Union Electric.

(Canada Dep. at 170-72).

* * * *

Q: How did you know your answers were correct?

A: Because I prepared myself for the test.

Q: Okay. Did you ever see any document that had the correct answers on it and any notations about which ones you had missed?

A: Not until the meeting with Barb.

Q: Okay. So what did you see at the meeting with Barbara Sachs?

A: I saw where they had marked the answers that I had given incorrectly.

Q: What did the document have on it that you saw at the meeting with Barbara Sachs?

A: I can't remember the exact questions that it was but I just remember some questions that were -- that we questioned and there was no ruling on it and I know that that was a correct answer and I don't remember the question that it was pertaining to but I remember it not having the correct answer.

Q: Okay. You didn't make any written answers when you were in this interview, right, it was all oral, right?

A: Yes.

Q: So if there were anything written down about your answers, it would have been written down by the two people who gave the interview, right?

-9-

A: Yes.

Q: So did you ever see in your meeting with Barbara something that had notes about what your answers were?

A: Yes.

Q: Okay. And was it graded? Did it have, you know, some kind of marking as far as a grading on it?

A: Yes.

Q: And there were questions on there that you thought were graded --

A: Incorrectly.

Q: -- incorrectly. Okay. Do you remember how many of those there were?

A: No, I don't remember the exact number.

Q: Okay. And why did you believe that they were graded incorrectly? Did you compare the notes about your answer with the company's answer?

A: Because I knew the answer I had given at that time and I knew the correct answer for that question that was asked me and I knew it was correct, that I had given them the correct answer.

Q: Were there notations of what your answers were?

A: No.

Q: Okay. There was just some marking about which questions you missed?

-10-

A: Yes.

Q: Okay.  And you thought that you had answered those questions correctly?

A: I knew I had answered the question correctly.

(Canada Dep. at 177-79).

The District Court characterized this testimony as the plaintiff's "subjective sense that he answered questions correctly but did not receive credit for them." Memorandum and Order of January 31, 1997, slip op. 12.  We believe that Mr. Canada's testimony goes beyond that.  In addition to his declaration that he believed he passed the test, he also testified about a grievance meeting attended by himself, his union's representative (Barbara Sachs), and representatives of the company.  At the meeting, the company presented Mr. Wiesehan's scoring sheet, which we understand to be notations made on a copy of the questions Mr. Canada was asked.  Although the transcript is not completely clear on this point, we think that the trier of fact could fairly understand it to say that the company's version of the model answers were included on the scoring sheet that Mr. Canada was shown at this meeting.  Having seen the model answers and Mr. Wiesehan's notes, Mr. Canada's testimony that questions he believed he had correctly answered were marked as incorrect is more than a subjective sense that he answered some questions correctly and did not receive credit for them.  This evidence is direct, personal testimony to an event that occurred in Mr. Canada's presence.  Mr. Canada's sworn testimony, coupled with the inconsistency between Mr. Albanello's testimony that Mr. Canada correctly answered four questions and Mr. Wiesehan's testimony that Mr. Canada correctly answered six questions, raises a genuine issue of fact as to whether Mr. Canada passed the test.

Union Electric asserts that Mr. Canada cannot establish a prima facie case of racial discrimination because he was not qualified for the position of gardener and because he cannot prove that similarly situated employees were promoted instead. Passing the test meant an applicant was qualified for the position, and whether Mr. Canada passed the test is precisely the factual issue that, in our view, this record presents. For this reason, we believe that summary judgment should not have been granted.

Accordingly, the judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

BEAM, Circuit Judge, dissenting.

I respectfully dissent. The district court correctly concluded that Mr. Canada's deposition testimony consisted of general statements that established nothing more than plaintiff's "subjective sense that he answered questions correctly but did not receive credit for them." Canada v. Union Elec. Co., No. 4:95CV2066, Mem. and Order at 12 (E.D. Mo. Jan. 31, 1997). This was not enough to avoid summary judgment for the defendant. The court points to ambiguous language in Mr. Canada's deposition for the proposition that Mr. Canada had access to the "company's version of the model answers" allowing him to know that his answers were correct. Ante at 12. One cannot reasonably extract such a state of affairs from the quoted litany. Indeed, when directly asked:

Q.    Okay. So you saw the questions and you saw the answers from the company, right?

A.    No, the answers that--the notations that he had made saying that I had not answered that question.

-12-

Nothing else in the record indicates that he ever saw the correct answers, only that he had studied for the test and that he, subjectively, felt that his answers were correct.

Accordingly, I dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.