72 F.Supp.2d 1061 (1999)
Mechele LOWRY, Plaintiff,
v.
POWERSCREEN USB, INC., d/b/a/ Ludlow-Saylor, and Kevin Tucker, Defendants.
No. 4:98CV00377 MLM.
United States District Court, E.D. Missouri, Eastern Division.
October 20, 1999.
*1062 *1063 David S. Schmidt, O'Fallon, MO, for Mechele Lowry, plaintiff.
James N. Foster, Jr., William M. Lawson, McMahon and Berger, St. Louis, MO, for Powerscreen USB, Inc., defendant.
Harry M. Stockman, Amelung and Wulff, St. Louis, MO, for Kevin Tucker.
Kevin Tucker, Truesdale, MO, pro se.

MEMORANDUM AND ORDER
MEDLER, United States Magistrate Judge.
This matter is before the Court on two Motions for Summary Judgment filed by Defendant Powerscreen USB, Inc., d/b/a/ Ludlow-Saylor ("Ludlow-Saylor"), one directed to the claim of Plaintiff Mechele Lowry ("Plaintiff") for sexual harassment [43], and the other regarding Plaintiff's claim of sex discrimination [44]. In addition, Ludlow-Saylor has filed a supplemental memorandum and supplemental exhibits to these motions. [51][53]
The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge for appropriate disposition of this case, pursuant to 28 U.S.C. § 636(b).[13]
Plaintiff has asserted two claims against the Defendant pursuant to Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991. Plaintiff claims she was subjected to an offensive and hostile work environment because of her sex and that she was subjected to disparate treatment because of her sex, in violation of 42 U.S.C. §§ 2000e et seq. In Count II, Plaintiff has asserted these same claims under the Missouri Human Rights Act, Mo.Rev.Stat. §§ 213.055 et seq.
In Count III, Plaintiff asserts a state law claim of assault and battery against Defendant Kevin Tucker.

I. Facts

Failure to Contest Defendant's List of Undisputed Facts[1]
Ludlow-Saylor has filed a list of undisputed facts with each of its motions, in accordance with Local Rule 4.01. Plaintiff filed a consolidated Response to both of the pending motions. However, Plaintiff failed to respond to Lulow-Saylor's undisputed facts, either by responding directly to Ludlow-Saylor's lists or by responding through argument in her Response to the pending motions.
Local Rule 4.01 provides, in part, that:
(E) A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.
Plaintiff has wholly failed to comply with this Rule and, thus, all Defendant's undisputed facts should be deemed to be true. *1064 Regardless of whether the Rule is enforced in this manner, however, the Court finds that the Undisputed Facts as listed by Defendant essentially comport with Plaintiff's own deposition testimony.
The Eighth Circuit has determined that when a plaintiff fails to respond adequately to a motion for summary judgment, a district court should not treat such a nonresponse as sufficient to dispose of the motion. Canada v. Union Electric Co., 135 F.3d 1211, 1213 (8th Cir.1997). "Courts should proceed to examine those portions of the record properly before them and decide for themselves whether the motion is well taken." Id. In so ruling, even on an unopposed motion for summary judgment, the court should review the facts in a light most favorable to the party who would be opposing the motion. Id., at 1212.

Plaintiff's Deposition Testimony
Plaintiff began a relationship with Defendant Kevin Tucker("Tucker") in 1990. Plaintiff's Depo. p. 28.[2] He moved into the apartment where Plaintiff was living with her three children, whose father resides out of state. In May, 1996, Plaintiff accepted a job at Ludlow-Saylor. Id., pp. 32-34.[3] She was originally hired for a 60-day temporary position and was later offered a permanent position which she accepted. Id., pp. 33-34. Tucker also worked at Ludlow-Saylor and had been employed there for about a year before Plaintiff was hired. Id., p. 35. In August, 1996, when Plaintiff's older daughter returned from a camping trip, Tucker began to abuse her. He "started smacking [her] around ... he bit her, and pulled her hair out, and through [sic] her out the front door." Id., pp. 29, 31. Plaintiff moved out and into her sister's house. Her children moved in with her mother. That same day, her son, nick-named Scooter, attempted suicide by hanging himself. Id. pp. 31-32. His grandmother was at home with him when he made this attempt and rushed to save him. She was unable to prevent him from hanging himself for several minutes, but was able to save his life by holding him up to release the pressure on his neck until someone else in the house was able to retrieve a knife to cut the belt with which Scooter had hung himself. Id., p. 31. Subsequently, Scooter went into a coma for seven days, and as a result of this suicide attempt, became disabled. Id., pp. 11-12. Scooter told Plaintiff that one of the reasons he tried to kill himself was Tucker's abusive behavior toward him. Id., p. 39.
During this same time period, Plaintiff's daughter, who was approximately seventeen years old, informed her mother that Tucker had been sneaking into her room at night with a flashlight and had fondled her and raped her. Id., pp. 29-30. She indicated that Tucker had engaged in this behavior throughout the time Tucker lived with Plaintiff. Id., p. 39.
Plaintiff testified that after Tucker stopped living with her he began behaving in a bizarre manner, following her, stalking her and threatening her. Id., pp. 50-55. Those threats included threats that he would kill her and her children. Id.
In August, 1996, when Plaintiffs son tried to commit suicide, Ludlow-Saylor gave her leave under the Family and Medical Leave Act ("FMLA").
Plaintiff testified about the following specific events that followed:
 She returned to work at Ludlow-Saylor in September, 1996, working the second shift. Id., p. 46.
 During the period in September, 1996, when Plaintiff worked the same shift *1065 as Tucker, he treated her badly. He called her names, watched her, followed her into a restroom, threw a can of soda and a hammer at her, followed her around outside and told her "he could pick [her] off like a deer at a hundred yards and [she] would never know what hit [her]". Id., pp. 50-55.[4] After working a week or so on the same shift as Tucker Plaintiff requested a transfer to the third shift to get away from Tucker, who also worked the second shift. Id., pp. 46, 50.
 Ludlow-Saylor transferred Plaintiff to the third shift within about one week after her request, in September, 1996. Id.
 Plaintiff worked the third shift for two to three months, until most of that shift was shut down. Ludlow-Saylor then transferred Plaintiff back to the second shift. Id., p.70.
 Ludlow-Saylor transferred Plaintiff again, this time to the first shift, in January, 1997 after she requested a transfer in order to get away from Tucker. Tucker, who was still working the second shift had been verbally abusive to her after she transferred back to the second shift. Id., p. 73. Plaintiff made this request to Frank McCoy, who informed her that there was only one position available on the first shift and permitted her to take it. Plaintiff was grateful for this transfer. Id.[5]
 During the period December 1996 through March, 1997, Tucker called Plaintiff on the phone at work. She would hang up on him or would reject taking the calls. Tucker attempted to enter Ludlow-Saylor building, at which time Frank McCoy or Ronnie Strausser would either prevent his entry or, if he gained access to the facility, would ask him to leave. Plaintiff testified that Strausser and McCoy would take this action every time Plaintiff requested it, or even without a request from her, because Tucker was not permitted in the building when it was not his shift, Id., 99. 74-75.
 Tucker came to Ludlow-Saylor and entered the plant on February 14, 1997, in an attempt to bring Plaintiff flowers and candy. Supervisors removed Tucker from the plant because it was not his shift and he was not permitted on the premises when not working. Tucker banged on the locked door after he was told to leave the plant. Id., pp. 85-86.
 Plaintiff believes she performed her work well from her first day at Ludlow-Saylor through the time when she began to be absent from work in March and April, 1997:
Q. So, even with all of this going on[,] even with Kevin Tucker peeking around pallets or peeking around machines you were still able to continue to perform your job effectively; is that fair to say?
A. I still did my job, yes.
Q. And were able to do just as high a quality of job as you did before; am I right?
Q. There was a few days when I was pretty upset. I know that.
A. But that didn't interfere with your getting the job done, did it?
A. I don't think so.
Id., p. 129.
 Beginning on April 3, 1997, Plaintiff was absent from work a number of days. Then, on the 7th of April, *1066 Plaintiff went to see a physician, Dr. Horacio Crespo. Plaintiff attempted to return to work on the 11th or 12th of April and was informed by Ronnie Strausser that she would need a return to work certificate from a physician, in accordance with standard company policy. Id., pp. 98-99. Plaintiff then went to see Dr. Crespo and requested a certificate to return to work.
Q. Did you tell him [Dr. Crespo] you had to have one that went back to the third [of April]?
A. Yes, I did.
Q. Did you tell him how important it was to have one that went back to the third?
A. Yes, I did. And I told him  and he knew how sick I had been over all of it and that he  you know, I was really upset because he didn't.
Q. And did you tell him that if you didn't have an excuse at that point in time you would be terminated?
A. Yes, I did.
Q. Did he understand that or at least seem to?
A. He said that he couldn't professionally. He could not write that he had seen me on them days because he hadn't.
Id., 100-01.
 Plaintiff admits she falsified the return to work certificate provided by Dr. Crespo and was terminated by Ludlow-Saylor as a result of this action. Id., p.90. She changed a seven to a three, indicating the certificate covered the period of April 3 onward, instead of April 7 onward, as written by Dr. Crespo. Id., p. 95.
 Plaintiff was terminated pending investigation in April, 1997 and finally terminated on May, 15, 1997. Complaint, Count I.
 Plaintiff was a member of the International Association of Machinists and Aerospace Workers union ("IAM") while employed at Ludlow-Saylor. The union contract with Ludlow-Saylor provides in the first paragraph of Section 2 that falsification of records, including time cards, is an offense subject to immediate dismissal. Plaintiff's Depo. p. 109.
 Plaintiff admits that she used curse words at work and that she used them when hollering at Tucker to leave her alone. She admits she repeatedly used fowl language to reprove him at work. Id., pp. 146-149.
 At some point in time, Plaintiff reported to work and found a picture of a naked women drawn on the table at her work station. She reported the graffiti to manager Ronnie Strausser. He and other company managers and other employees came by to observe the graffiti and it was painted over by 3:00 p.m. that same day. Id., p. 78. The next day there was new graffiti at Plaintiff's work station. This time there was a picture of a woman bent over with the words "Butch in the hole". Id., pp. 78-81.[6] Plaintiff complained to Frank McCoy, Ronnie Strausser, and Joe McDonald. At about 3:30 p.m. that same day, someone came to the work station with a cutting torch to remove the offensive picture and words. Id. Plaintiff testified that she did not know who drew the pictures and that there was nothing to indicate that they were drawn by Tucker. Id.
 Plaintiff testified about her satisfaction with her employment at Ludlow-Saylor:
Q. Going back to your experience at Ludlow-Saylor and other than your experience with Kevin Tucker, did anyone at Ludlow-Saylor ever use any sexually offensive or unpleasant language toward you or in your presence?

*1067 A. Not really, no. I was treated relatively respectfully. It was kind of a  I enjoyed working there. It wasn't a bad job.
Q. Going back to your experience at Ludlow-Saylor. From the highest level executives down to the lowest level hourly employees, is it fair to say that everyone there with the exception of Kevin Tucker treated you with respect and dignity?
* * * * * *
A. Yeah, I didn't have a problem with anyone.
Id., at pp. 47-48.
 Subsequent to her employment at Ludlow-Saylor, Plaintiff's subsequent periods of unemployment were due to her own choices  largely influenced by her persistent problems with Kevin Tucker. Plaintiff's Depo. 2, pp. 68-69.
 Tucker harassed Plaintiff throughout the period of her employment at locations away from Ludlow-Saylor, including her friend's home and her sister's home. Id., pp. 78, 84.
 Plaintiff voluntarily lived with Tucker again for three weeks in November, 1997, several months after she was discharged from Ludlow-Saylor. Id., pp. 42-43.

Ludlow-Saylor's Additional Facts
Ludlow-Saylor has included as exhibits to its motion, transcript excerpts from the depositions of its witnesses. Additional facts presented in those depositions include:
 Frank McCoy is the supervisor who spotted Tucker on Valentine's Day, 1997 and ordered him to leave the plant. He told Tucker that any deliveries should be taken to the front desk. McCoy Depo., pp. 54-55.
 McCoy first learned about the alleged incidents where Tucker threw a soda can and a hammer at Plaintiff when reading Plaintiff's deposition in this case. Id., p. 45.
 McCoy and Joseph McDonald, Vice President of Administration for Ludlow-Saylor, made the determination to terminate Plaintiff based upon her falsification of a return to work slip. McCoy Depo., pp. 59-60; McDonald Depo., p. 40.
 McDonald recalls being notified of graffiti at Plaintiff's work station and recalls the derogatory drawing and phrase. McDonald interviewed all members of Plaintiff's shift to determine who was responsible for the graffiti, but was not able to conclude who that was. In the process of interviewing, McDonald explained to all workers the sexual harassment policy at Ludlow-Saylor and also explained the policy to Plaintiff, to whom he gave a copy of the written policy. He informed her that sexual harassment was not permitted, nor was retaliation. McDonald also informed Plaintiff that she should report any further action, including retaliation to him. McDonald and Plaintiff had several follow-up conversations about this incident. McDonald Depo. pp. 29-30, 35-36.
 Dr. Crespo diagnosed and treated Plaintiff for stress and depression prior to as well as during her employment with Ludlow-Saylor. Crespo Depo., pp. 22, 32. Plaintiff did not mention to Dr. Crespo that she was under stress at her workplace. Id., pp. 32, 34, 37, 38. Dr. Crespo told Plaintiff he would not change her return to work slip to accommodate the dates she requested because they were not accurate. Id., pp. 35-37.
 Prior to Plaintiff's termination, Ludlow-Saylor had terminated a male employee for falsifying a document, as prohibited by the same collective bargaining agreement applicable to Plaintiff. McDonald Depo., pp. 39-40.

II. ANALYSIS

A. Summary Judgment Standards
Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for *1068 summary judgment if all the information before the court demonstrates that "there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); F.D.I.C. v. Bell, 106 F.3d 258, 263 (8th Cir.1997); Hall v. Tollett, 128 F.3d 418, 421-422 (6th Cir.1997). The initial burden is placed on the moving party to clearly establish the non-existence of any genuine issue of fact that is material to a judgment in his favor. Handeen v. Lemaire, 112 F.3d 1339, 1346 (8th Cir., 1997); City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., 838 F.2d 268, 273 (8th Cir. 1988).
Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and "specific facts showing there is a genuine issue for trial." Handeen, 112 F.3d at 1346. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Once the burden shifts, a party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleadings to get to the jury without any significant probative evidence tending to support the complaint. Anderson, 477 U.S. at 256, 106 S.Ct. 2505. Moreover, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Masushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). See also Hall, 128 F.3d at 422 (mere existence of a scintilla of evidence in support of non-movant is insufficient). Indeed, the non-moving party must establish to the court that there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for him. Anderson, 477 U.S. at 249, 106 S.Ct. 2505; Celotex, 477 U.S. at 324, 106 S.Ct. 2548. The United States Supreme Court has clearly described this analytical process.
In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.
Celotex, 477 U.S. at 322-23, 106 S.Ct. 2548.
If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. Roberts v. Browning, 610 F.2d 528, 531 (8th Cir.1979). Moreover, summary judgment is not a "disfavored procedural shortcut," but, rather, is an "integral part of the Federal Rules as a whole." Celotex, 477 U.S. at 327, 106 S.Ct. 2548 (1986); City of Mt. Pleasant v. Associated Electric Cooperative, Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Sexual Harassment
To set forth a claim of hostile work environment based upon sexual harassment by non-supervisory co-workers, the Plaintiff must establish that (1) she belongs to a protected class, (2) she was the subject of unwelcome harassment, (3) there is a causal nexus between the harassment and her membership in her protected group (female); (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known of the harassment and failed to take proper remedial action. Carter v. Chrysler Corporation, *1069 173 F.3d 693, 700 (8th Cir.1999); Scusa v. Nestle, USA Company Inc., 181 F.3d 958, 964 (8th Cir.1999)(also construing elements of claim of sexual harassment under Title VII).
The United States Supreme Court recently described the scope of harassment which is prohibited by Title VII:
We have repeatedly made clear that although the statute mentions specific employment decisions with immediate consequences, the scope of the prohibition "is not limited to `economic' or `tangible' discrimination," Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993), and that it covers more than "terms' and `conditions' in the narrow contractual sense." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, ___, 118 S.Ct. 998, 1001, 140 L.Ed.2d 201 (1998). Thus, in Meritor we held that sexual harassment so "severe and persuasive" as to "`alter the conditions of [the victim's] employment and create an abusive working environment"' violates Title VII.
Faragher v. City of Boca Raton, 524 U.S. 775, ___, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (citations omitted). See also Meritor Sav. Bank v. Vinson, 477 U.S. 57, 65-67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Discourtesy or rudeness should not be confused with harassment. Scusa, 181 F.3d. 958, 964; Faragher, 118 S.Ct. at 2283. Title VII is not tantamount to a general civility code. Id.; Scusa, at 966. The conduct must be extreme and must amount to a change in the terms or conditions of employment. Faragher, 118 S.Ct. at 2283.[7]
It is uncontested that Plaintiff is a member of a protected class. What is less clear is whether the incidents Plaintiff alleges are sufficient to support a prima facie case of sex harassment, particularly with regard to the third and fourth elements. Plaintiff's allegations, when taken in the light most favorable to her, are that a co-worker, with whom she was personally involved prior to as well as during her employment at Ludlow-Saylor, acted menacingly toward her at work. Plaintiff, however, has alleged nothing that indicates any of Tucker's behavior was because of Plaintiff's sex or gender. Indeed, Plaintiff's testimony is replete with descriptions of her problems with Tucker as personal in nature.[8] She consistently testified that they were based upon their personal relationship, which was begun outside of and prior to Plaintiff's employment. At the same time, Plaintiff consistently testified that all others at work treated her fairly and that she had no complaints against anyone else. Plaintiff's Depo. pp.47-48. Hence, with regard to Tucker's behavior, there is no causal link between his alleged behavior and Plaintiff's status as a female at work. Plaintiff has not shown that she was "exposed to disadvantages, terms or conditions of employment to which members of the other sex were not exposed." Scusa, 181 F.3d at 965. Succinctly put, Plaintiff has failed to show that Tucker's behavior was harassment based upon Plaintiff's gender and not her prior and ongoing relationship and problems with Tucker.[9]
*1070 The only other type of harassing behavior Plaintiff has raised is the graffiti that appeared at Plaintiff's work station on two consecutive days. This graffiti consisted of two apparently graphic drawings and a written phrase. Plaintiff reported these incidents to supervisors early on the two mornings in which they appeared; management had them removed by some time between 12:30 and 3:30 p.m. (Plaintiff testified it was 3:30 p.m.) Moreover, undisputed testimony establishes that Ludlow-Saylor's management took immediate action, distributing the sex harassment policy to its employees, talking with them about it and interviewing all shift workers to try and determine who had authored the graffiti, and encouraging Plaintiff to come to them immediately if any offending incidents recurred or if any retaliatory action was ever taken against her. Importantly, no linkage was found between the graffiti and Tucker. Even Plaintiff is unaware of who authored the graffiti and did not testify that it was Tucker. Hence the two consecutive days of graffiti stand alone as harassing behavior. Relying on established precedent, the Court finds that one or two instances such as this, particularly when unlinked to Tucker's behavior, do not suffice as the kind of behavior which alters terms and conditions of employment to serve as an adequate basis for a prima facie case. H___ 21 (a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule and insult); Gipson v. KAS Snacktime Co., 171 F.3d 574, 578 (8th Cir.1999) (the harassing behavior must create an abusive working environment); Faragher, 118 S.Ct. at 2284 ("conduct must be extreme to amount to a change in the terms and conditions of employment"). Cf. Ways v. City of Lincoln, 871 F.2d 750, 755 (8th Cir.1989) (fifty examples of racial harassment); Carter v. Chrysler, 173 F.3d at 701 (summary judgment for employer was not appropriate where plaintiff alleged dead animal, foul-smelling materials and debris were left at her work station, where she was subjected to racial and sexual epithets for over two years on a regular basis and at least one of the plaintiff's managers believed she had been sexually harassed).
Given these undisputed facts, the Court finds that the actions of Tucker were not based upon Plaintiff's gender and, hence, cannot serve to fashion necessary elements of Plaintiff's prima facie case. The only other offending behavior cited by Plaintiff, the graffiti, occurred twice throughout her one-year tenure, is unlinked to any other alleged harassment and cannot alone suffice to satisfy element four of the prima facie case, particularly in the face of Plaintiff's own testimony which unequivocally states that she was treated well and fairly by everyone at Ludlow-Saylor except Tucker.
Even if the Court were to assume, arguendo, that Plaintiff had established her prima facie case, Ludlow-Saylor has effectively raised an affirmative defense that it exercised reasonable care to prevent or correct any harassing behavior and that the I ___ed ___f available opportunities provided by Ludlow-Saylor. Faragher, 118 S.Ct. at 2292-93.[10]
With regard to Tucker's behavior:

*1071  Plaintiff requested shift changes twice in six months and was granted both changes within a matter of one to two weeks;
 Supervisors responded to Plaintiff's request to remove Tucker from the premises when required and, indeed, spotted Tucker on their own and instructed him to leave (on Valentine's Day, 1997), when he was not scheduled for work, supervisors Strausser and McCoy promptly told him to leave and, indeed, locked him out; and
 When Plaintiff took a call from Tucker at work, supervisors learned that he had threatened Plaintiff's children and permitted her to call police and her family immediately. Tucker was not in the vicinity of the Ludlow-Saylor premises at the time.
Thus, even assuming Plaintiff could set forth a prima facie case with regard to Tucker's behavior, Ludlow-Saylor has set forth the remedial actions it took to prevent these incidents and to protect Plaintiff from them (changing shifts, locking doors, etc.). Plaintiff has provided the Court with nothing beyond mere allegation which disputes the response of management was adequate.
Plaintiff has failed to set forth a prima facie case of harassment. Moreover, even if she had, Ludlow-Saylor has set forth an affirmative defense, the substance of which Plaintiff's own testimony does not dispute, and to which the Plaintiff has failed to respond.

Disparate Treatment
Title VII prohibits employers from discharging an employee because of her sex, but also prohibits an employer from treating her differently, by reason of her sex, with respect to the "terms, conditions, or privileges" of her employment. See 42 U.S.C. § 2000e-2(a)(1). "A plaintiff may prove such disparate treatment by showing that she was treated less favorably than similarly situated employees who are not in the plaintiff's protected class." Stanback v. Best Diversified Products, Inc., 180 F.3d 903, 909-10 (8th Cir.1999); see also Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 259-60 (8th Cir.1996). To establish a prima facie case, a plaintiff must demonstrate that she is a member of a protected class and that she was treated differently because of her race [or sex] than similarly situated employees who were not members of a protected class. Stanback v. Best Diversified Products, Inc., 180 F.3d at 909-10 (construing prima facie elements for hostile environment based upon racial harassment).
To succeed against a motion for summary judgment, a plaintiff must produce "`specific tangible evidence' showing a disparity in the treatment of similarly situated employees." Stanback, at 909-10 (citing Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1109 n. 4 (8th Cir. 1998)). The plaintiff has the burden of proving that she and the disparately treated employees (nonmembers of a protected class) were similarly situated in all relevant respects. Ward v. Procter & Gamble Paper Products Co., 111 F.3d 558, 560 (8th Cir.1997); Harvey v. Anheuser-Busch, 38 F.3d 968, 972 (8th Cir.1994); Jones v. Frank, 973 F.2d 673, 676 (8th Cir.1992). "Employees are similarly situated when they are involved in or accused of the same offense and are disciplined in different ways." Harvey, 38 F.3d at 972.
*1072 Plaintiff has failed to make any showing that she was treated differently than any similarly situated employee who was not a member of her protected class.[11] She does not allege sufficient facts to demonstrate that she was treated differently in any respect to any male at Ludlow-Saylor.
Plaintiff alleges two instances to support this claim. First, Plaintiff suggests that her assignment to the "brake" position on the first shift was indicative of disparate treatment, She alleges she was required to take this position and that it required harder work that some positions. Plaintiff readily testified, however, that it was the only position open on that shift and that she was "grateful" for this transfer to accommodate her need to get away from Tucker. Plaintiff's Depo. p. 73. Plaintiff does not demonstrate that similarly situated males were treated any differently in this regard.
Second, Plaintiff alleges that her termination constituted disparate treatment, but bases this allegations on sheer conjecture, guessing in her deposition that no male employee had been terminated for falsifying documents. In fact, Plaintiff does not dispute Ludlow-Saylor's testimony that it, indeed, terminated a male employee for the same kind of violationfalsifying documents and had done so prior to terminating Plaintiff. Moreover, and as discussed above, Plaintiff does not dispute she was terminated because she falsified her return to work slip and does not provide any connectionother than sheer conjecture between her termination and her sex.
The Court thus finds that Plaintiff has failed to meet her burden of demonstrating she has a prima facie case of disparate treatment. She has utterly failed to show any male who was similarly situated was treated better than she. Moreover, she testified that she was treated fairly at Ludlow-Saylor, that she falsified the return to work slip in violation of company policy, and that she was grateful for the "brake" position she was able to take on the first shift. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23, 106 S.Ct. 2548. Therefore, summary judgment against the Plaintiff on her disparate treatment claim is appropriate.

III. Conclusion
Plaintiff's deposition testimony reveals that the personal trauma she experienced during the time she was employed at Ludlow-Saylor was significant. Even Plaintiff's own testimony fails, however, to take her personal tragedy and transform it into something within the realm of Title VII violations. While the Court is sympathetic to Plaintiff's personal plight, it finds that Plaintiff has failed to set forth any evidence by deposition or affidavit which demonstrates that there is a genuine issue as to a material fact which precludes summary judgment.
Plaintiff has claimed sexual harassment and, while this Court recognizes that Plaintiff was pursued by Kevin Tucker in an unwelcome way, that behavior arose, by Plaintiff's own admission, from their six-year relationship and was not dependent upon their workplace connections. More importantly, there is nothing which creates a necessary causal connection to demonstrate that Tucker's behavior was sexual harassment within the meaning of Title VII because it was based upon personal animosity or emotion and not upon Plaintiff's gender. Thus, his actions are not sufficient to provide a prima facie case of harassment.
For its part, Ludlow-Saylor positively responded when Plaintiff complained to management. Ludlow-Saylor transferred her to a different shift twice in less than four months at her request, and worked to keep Tucker away from her while she was *1073 at work. When Plaintiff's work station area was defaced, Ludlow-Saylor took prompt remedial action, removing the offensive graffiti and interviewing all employees on her shift and advising them of the company's policy against sexual harassment. Thus, even if Plaintiff had made a prima facie case of harassment, Ludlow-Saylor has presented evidence which is undisputed that it took prompt remedial action whenever Plaintiff advised them of, or they became aware of, any unwelcome behavior.
With regard to Plaintiff's claim of disparate treatment, Plaintiff has failed to make her prima facie case because she has failed to claim in any way that similarly situated males were treated differently.[12]
The remaining claim in this case is a state law claim for assault and battery alleged against Defendant Kevin Tucker. Courts have discretion to decline jurisdiction over state claims where all federal claims have been dismissed. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Sanders v. Sears, Roebuck & Company, 984 F.2d 972, 976 (8th Cir.1993). The Court has considered the rationale for retaining jurisdiction and declines to exercise such jurisdiction over the remaining state claim.
The Court also notes that Plaintiff's Response cites to only two cases to support her claims and offers no citation to anything in the record before the Court. Plaintiff, indeed, refers the undersigned to an ALR article, suggesting to the Court that this is a better course than to "run a list of citations to this Court". The undersigned is sympathetic to the busy practice of active attorneys and, indeed, finds brevity refreshing in the appropriate situation. However, the undersigned suggests that Plaintiff's extreme brevity in her Response (essentially three pages) to a Motion for Summary Judgment is not appropriate. Moreover, the Court finds Plaintiff's suggestion that it should inspect an attached ALR article and nearly 400 pages of Plaintiff's deposition testimony  without a single citation to that testimony to guide the Court  to be impertinent at the very best.
ACCORDINGLY,
IT IS HEREBY ORDERED that Defendant Powerscreen USB, Inc. d/b/a/ Saylor-Ludlow's two Motions for Summary Judgment are GRANTED. [43][44]
IT IS FURTHER ORDERED that judgment be entered against Plaintiff Mechele Lowry and in favor of Powerscreen USB, Inc. d/b/a/ Ludlow-Saylor.
IT IS FURTHER ORDERED that the claims against Defendant Kevin Tucker, based upon state law, are DISMISSED.
IT IS FINALLY ORDERED that Defendant's Motion to Bifurcate is DENIED as moot [50].

JUDGMENT
In accordance with the Memorandum and Order filed this day and incorporated herein,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that all claims in the above-captioned case are DISMISSED. It is further ordered that Counts I and II of the Complaint in this action are dismissed with prejudice and judgment shall be entered in favor of the Defendant Powerscreen USB, Inc., d/b/a/ Ludlow-Saylor and against Plaintiff Mechele Lowry. Count III, alleged only against Defendant Kevin Tucker, is dismissed without prejudice.
NOTES
[1] Ludlow-Saylor's two lists of Undisputed Facts are not identical. They do not conflict with one another, but include different facts.
[2] This citation is to the transcript of Plaintiff's first Deposition, taken December 8, 1998. Plaintiff was deposed on three different days with each deposition transcription beginning at page one. Therefore, references to Plaintiff's subsequent depositions are referred to as Plaintiff's Depo. 2 (deposition of December 23, 1998) and Plaintiff's Depo. 3 (deposition of December 31, 1998).
[3] Ludlow-Saylor is in the business of producing and manufacturing various types of screen. Defendant's Undisputed Facts, ¶ 1.
[4] Plaintiff contradicts herself about the order and location of these events. In the "chronology" incorporated by reference into her interrogatory answers (Nos. 7 and 8), Plaintiff testified that Tucker threw the soda can at her in November, 1996, after work, and that the hammer incident took place in January 1997. She does not allege she was ever struck with either object.
[5] First Shift supervisors were Ronnie Strausser, Jim Drozkowski and Terry Coughlin. Defendant's Undisputed Facts, ¶ 4; Frank McCoy Deposition, pp. 19-20.
[6] There was an employee named Butch who worked with Plaintiff. Plaintiff testified he was also bothered by the drawing and complained to management along with Plaintiff. Plaintiff's Depo. Pp. 81-82.
[7] Faragher focused particularly on the contours of employer liability, relying on substantial precedent for guidance as to the pervasiveness and character of the behavior prohibited by Title VII.
[8] Given the intimidation Plaintiff claims occurred in late 1996 and early 1997, moreover, it is startling that the she stayed with Tucker at his residence again in the fall of 1997 of her own volition.
[9] Other circuits have examined cases with facts similar to those present here. Harassing behavior which is based upon personal animosity or a failed personal relationship, and not sex, does not fall within the protections of Title VII's prohibition against sexual harassment. See e.g., Galloway v. General Motors Service Parts, 78 F.3d 1164, 1168 (7th Cir.1996); Rothenbusch v. Ford Motor Company, 61 F.3d 904 (6th Cir.1995) (unpublished per curiam) (jury instruction requiring harassment be based upon sex and not merely personal animosity upheld as correct). In Excel Corporation v. Bosley, 165 F.3d 635, 641 (8th Cir.1999), Judge Loken, in a concurring opinion cites Rothenbusch and notes with approval its conclusions that a jury instruction cautioning against expanding Title VII "unwittingly ... to impose liability on employers for condoning or not remedying offensive co-worker conduct" which may arise from a personal relationship gone sour and may not amount to discrimination based upon "sex" as prohibited by Title VII.
[10] It is undisputed that Plaintiff was terminated because she falsified her return work slip written by Dr. Crespo. Under Faragher affirmative defenses may be raised by a defendant where no tangible action has been taken. In Faragher, the plaintiff had resigned her position as a lifeguard and was not terminated. The Court analyzed the case as one in which no tangible employment action was taken. In this instance, Plaintiff admits her termination was related to her own actions, taken in contravention of company and union (CBA) policy and not as a result of or prompted by her personal problems with Tucker. Thus, assuming Plaintiff had been able to make her prima facie case, the case would fall beneath the rubric of those cases in which an affirmative defense may be presented in accordance with Faragher. Ludlow-Saylor has provided adequate testimony and other information in the record which demonstrates that it is virtually uncontested that Ludlow-Saylor had a policy against sexual harassment and took prompt remedial action  whenever Plaintiff invoked it  against any offending behavior, whether by Tucker or the unknown author of the graffiti.

In addition, even if Plaintiff's termination is deemed to be part of this analysis, falling within the burden-shifting framework of McDonnell Douglas, Ludlow-Saylor has demonstrated that the reason presented for terminating Plaintiff  a fraudulent return to work slip  was not pretext. Indeed, Plaintiff agreed repeatedly in her deposition that she took this action knowing of the consequences and understood her action could lead to termination. Pivotally, she also agrees that this is the reason Ludlow-Saylor terminated her, precluding any argument about pretext.
[11] Ludlow-Saylor points out in its Reply that Plaintiff does not address the disparate treatment claim in her response, thus abandoning that claim. The Court finds that, even if that claim were not deemed abandoned, Plaintiff has failed to set forth a prima facie case.
[12] Plaintiff's claims under the MHRA, which is subject to the same analysis as Plaintiff's claims under Title VII, also fail.