Betty CLAYTON, Appellant,

v.

**WHITE HALL SCHOOL DISTRICT, Appellee.**

**Equal Employment Opportunity Commission, Amicus Curiae.**

No. 88–1565.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1988.

Decided May 26, 1989.

Rehearing Denied June 29, 1989.

Lisa A. Kelly, Pine Bluff, Ark., for Betty Clayton.

John F. Suhre, Washington, D.C., for E.E.O.C.

Jeff Starling, Pine Bluff, Ark., for White Hall School Dist.

Before McMILLIAN and BEAM, Circuit Judges, and HARPER,* Senior District Judge.

McMILLIAN, Circuit Judge.

Betty Clayton appeals from a final judgment, entered in the District Court[1] for the Eastern District of Arkansas, granting the White Hall School District's (White Hall) motion for summary judgment on her employment discrimination complaint. For reversal, Clayton argues that the district

---

* The Honorable Roy W. Harper, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

court erred (1) in finding that she lacked standing to bring a cause of action under Title VII; (2) in holding that, as a matter of law, a single, isolated incident of discrimination is insufficient to support a "hostile working environment" claim; and (3) in finding that she lacked standing to bring a fourteenth amendment claim of arbitrary or irrational classification under color of state law. For the reasons discussed below, we affirm the judgment of the district court in part, vacate in part, and remand to the district court with instructions to grant summary judgment in favor of White Hall on Clayton's hostile working environment claim.

Clayton, a white woman, was employed as a school cafeteria manager by White Hall. In December of 1980, Clayton moved outside the White Hall district, but her child continued to attend a school in the district until 1983. Clayton alleged that White Hall knew that she was no longer residing in the district but at no time informed her that she should remove her child from school.

At the end of the 1982–1983 school year, Lloyd Gaynor, a black man employed as a janitor by White Hall, attempted to enroll his child in the district. Like Clayton, Gaynor lived outside the district. White Hall refused to enroll Gaynor's child and began enforcing its policy of requiring district residence as a prerequisite for enrollment in district schools except for the children of certified or administrative personnel. After Gaynor's inquiry, White Hall informed Clayton that, pursuant to this policy, her child could no longer attend the White Hall schools. Neither Clayton nor Gaynor are classified by White Hall as certified or administrative personnel.

Clayton's original complaint, filed on May 31, 1984, was dismissed with prejudice by the district court for failure to allege any theory of recovery based on a racially motivated change in Clayton's terms and conditions of employment. On appeal, this court remanded the case for entry of dismissal without prejudice. *Clayton v. White Hall School District,* 778 F.2d 457 (8th Cir.1985) (*Clayton*).

Clayton filed an amended complaint on February 20, 1986, alleging three theories of recovery. First, Clayton claimed that "[White Hall's] racial discrimination directly and negatively impacted on the terms and conditions of her employment." Second, she claimed that White Hall's actions created a hostile working environment permeated by racial discrimination. Finally, Clayton claimed that White Hall's policy of differentiating between certified and administrative personnel and non-certified, nonadministrative personnel is invidious discrimination based upon an arbitrary and irrational classification created under color of state law.

On March 16, 1988, the district court granted White Hall's motion for summary judgment on all counts except the hostile working environment claim, which was dismissed without prejudice. *Clayton v. White Hall School District,* No. PB–C–86–116 (E.D.Ark. Mar. 16, 1988). This appeal followed.

In reviewing a grant of summary judgment, this court applies the same standard employed by the trial court. *Agristor Leasing v. Farrow,* 826 F.2d 732 (8th Cir. 1987) (*Agristor*). According to Fed.R.Civ. P. 56(c), summary judgment is proper when it appears that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *E.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case...."). "In making this determination, the court is required to view the evidence in the light most favorable to the non-moving party and to give that party the benefit of all reasonable inferences to be drawn from the underlying facts." *Agristor,* 826 F.2d at 734.

## STANDING

Clayton argues that the district court erred in finding that she lacks standing to raise issues of racial discrimination directed against a minority co-worker. Clayton

claims that such discrimination has resulted in deprivation of a previously established benefit of her employment. Clayton further alleges that Title VII protection extends to "conditions" and "privileges" of employment including the intangible benefit of a working environment free of racial discrimination. White Hall, on the other hand, argues that the district court properly granted its motion for summary judgment because Clayton lacked standing to bring an action under Title VII.

In *Coalition for the Environment v. Volpe,* 504 F.2d 156, 165 (8th Cir.1974) (*Volpe*), this court stated: "[t]he present test for standing is twofold: whether the challenged action has caused plaintiff injury in fact and whether the injury was to an interest arguably within the zone of interests to be protected or regulated by the statutes." *See also United States v. SCRAP,* 412 U.S. 669, 686, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254 (1973) (*SCRAP*) (enumerating a two-prong test for standing: "injury in fact" that is "arguably within the zone of interests to be protected or regulated by statute"); *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970) (question is "whether the interests sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute").

■ The requirement of "injury in fact" is a constitutional limitation which ensures that complainants "have the personal stake and interest that impart the concrete adverseness required by Article III of the Constitution." *Volpe,* 504 F.2d at 165 (quoting *Barlow v. Collins,* 397 U.S. 159, 164, 90 S.Ct. 832, 836, 25 L.Ed.2d 192 (1970)). It should be noted, however, that "injury in fact" is not limited to economic harm, nor does the fact that other persons share the same injury defeat standing. *See SCRAP,* 412 U.S. at 686, 93 S.Ct. at 2415. "Aesthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society, and the fact that ... interests are shared by the many rather than the few

does not make them less deserving of legal protection through the judicial process." *Sierra Club v. Morton,* 405 U.S. 727, 734, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972).

Although we previously held that the loss of an economic benefit was not within the zone of interests protected by the civil rights laws, *Clayton,* 778 F.2d at 460, Clayton amended her complaint to include an allegation of a hostile working environment permeated by racial discrimination which has caused her severe emotional and psychological distress.

■ The hostile working environment theory of discrimination is based upon an employee's right to work in an environment free of unlawful discrimination, and the injury results from the lost benefits of associating with persons of other racial groups. *See id.* at 459. "[I]t is an emotional or psychological injury to the plaintiff herself which is the gravamen of this cause of action." *Id.* at 459.

■ Standing for purposes of Title VII is not limited to minority groups. *See id.* at 459; *Waters v. Heublein, Inc.,* 547 F.2d 466, 469 (9th Cir.1976), *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1100 (1977). Rather, it is dependent upon whether the plaintiff is a person claiming to be aggrieved by such discrimination. In *Trafficante v. Metropolitan Life Insurance Co.,* 409 U.S. 205, 209–10, 93 S.Ct. 364, 366–67, 34 L.Ed.2d 415 (1972), a unanimous Supreme Court held that such "persons aggrieved" included those who were not themselves the objects of discrimination, but were nevertheless injured "[by] the loss of important benefits from interracial associations."

In addition, with respect to the zone of interest of Title VII, this court has stated that "Title VII of the Civil Rights Act of 1964 is to be accorded a liberal construction in order to carry out the purpose of Congress to eliminate the inconvenience, unfairness and humiliation of racial discrimination." *Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421, 425 (8th Cir. 1970). *See also EEOC v. Shell Oil Co.,* 466 U.S. 54, 77, 104 S.Ct. 1621, 1635, 80 L.Ed.2d 41 (1984) ("dominant purpose of

[Title VII] ... is to root out discrimination in employment"). Clayton's interest in a work environment free of racial discrimination is clearly within the zone of interest protected by Title VII.

■ Therefore, because Clayton's claim of a racially discriminatory work environment alleges an injury in fact which is within the zone of interest protected by Title VII, she has standing to bring this suit.

## HOSTILE WORKING ENVIRONMENT

■ Clayton argues that there is a disputed question of fact as to whether her hostile working environment claim sufficiently alleged a racially hostile atmosphere. Specifically, she argues that a court must look to the totality of the circumstances to determine whether the working environment is free of a racially hostile atmosphere. We disagree. We hold that on this record Clayton failed to make a showing sufficient to establish a hostile working environment claim.

There is no factual dispute here. Clayton's hostile working environment theory relies upon a single incident of alleged discrimination. Clayton herself acknowledged in her deposition that there were no other incidents pointing to a hostile working environment. On remand, following the first appeal, she was afforded the opportunity to allege and prove a hostile working environment claim. She failed to do so. This single incident, as a matter of law, is insufficient. In a previous Title VII action, this court stated: "More than a few isolated incidents of harassment must have occurred to establish a violation of Title VII." *Gilbert v. City of Little Rock,* 722 F.2d 1390, 1394 (8th Cir.1983), *cert. denied,* 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984). *See also Powell v. Missouri State Highway & Transportation Department,* 822 F.2d 798, 801 (8th Cir.1987) ("Title VII ... is not necessarily violated by a few isolated racial slurs"); *Taylor v. Jones,* 653 F.2d 1193, 1199 (8th Cir.1981) ("plaintiff was subjected to an atmosphere heavily charged with racial discrimination"); *Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.

1971) (finding that a "discriminatory atmosphere" resulted from "working environments so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of ... workers"), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972).

Therefore, because Clayton's single allegation of discrimination is insufficient, as a matter of law, the district court should have granted summary judgment in favor of White Hall on Clayton's hostile working environment claim.

## EQUAL PROTECTION

Finally, Clayton argues that White Hall's residency exception which includes only the children of certified and administrative employees constitutes an arbitrary and irrational classification that violates her fourteenth amendment right to equal protection under the law. Specifically, she challenges the right of the school district to promulgate a policy which includes teachers and secretaries, but excludes cafeteria managers. Clayton stipulated, however, that her fourteenth amendment claim is not predicated upon any racial discrimination. Nevertheless, she claims that the classification failed to meet even the rational basis standard for due process review. We disagree.

■ The process of classifying persons for benefits inevitably requires that some persons with nearly equal claims will be placed on different sides of the line, and whether the line might have been better drawn is a matter for legislative, rather than judicial, consideration. *See, e.g., United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980) (*Fritz*). As Clayton acknowledges, the distinctions in White Hall's policy do not burden fundamental constitutional rights nor do they create "suspect" classifications, as do classifications based on race or national origin.

Therefore, the appropriate standard of review is the rational basis test, under which a classification will be upheld if it has some reasonable basis. *See, e.g., San Antonio Independent School District v.*

*Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). In cases involving social and economic benefits, the Supreme Court has consistently refused to invalidate classifications merely because it deemed them unwise or unartfully drawn. *Fritz,* 449 U.S. at 175, 101 S.Ct. at 459. The Supreme Court stated:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality."

*Id.* (citations omitted).

White Hall defends its classification on the grounds that it is a "fringe benefit" necessary to recruit and retain quality teachers and administrators for the district. This court must assume that the articulated purposes of White Hall's policy are the actual purposes, unless an examination of the circumstances precludes such assumption. *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 463 n. 7, 101 S.Ct. 715, 723 n. 7, 66 L.Ed.2d 659 (1981). Because there are no circumstances to suggest an ulterior purpose, we hold that White Hall's classification scheme has a rational basis. The district court properly granted White Hall's motion for summary judgment on Clayton's fourteenth amendment claim.

Accordingly, the judgment of the district court is affirmed in part and vacated in part, and the case remanded to the district court with instructions to grant summary judgment in favor of White Hall on Clayton's hostile working environment claim.