122 F.Supp.2d 1053 (2000)
Linda Charlene GOLLEHER, Plaintiff,
v.
AEROSPACE DISTRICT LODGE 837, I.A.M.A.W. Defendant.
No. 4:99CV1041 RWS.
United States District Court, E.D. Missouri, Eastern Division.
November 16, 2000.
*1054 John D. Lynn, Denner & Lynn, St. Louis, MO, for plaintiff.

MEMORANDUM AND ORDER
SIPPEL, District Judge.
Defendant Aerospace District Lodge 837 ("Local 837" or "the Union") is a labor organization which represents union members at the former McDonnell Douglas Corp. ("McDonnell Douglas"), now The Boeing Company ("Boeing"). Plaintiff Linda Golleher ("Golleher") was an employee of Local 837 and is still a member of the Union.
Golleher alleges that Local 837 discriminated against her in its capacity as an employer and as a labor organization in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.[1] She claims she was subjected to a hostile environment based on both sex and race. Local 837 has moved for summary judgment on Golleher's claim against it in its capacity as a union.
The Court finds that genuine issues of material fact exists and will deny Local 837's Motion for Summary Judgment.

I. Facts
Golleher is a white female who worked for Local 837 as a business representative ("BR") beginning in April, 1991. BRs provide services to union members such as representation in grievance procedures and contract negotiations. In late December, 1996 or early 1997, Golleher left her employment with the Union because she was not re-elected to her position as a BR and returned to active duty with McDonnell Douglas. Although she was no longer employed by Local 837, Golleher was appointed to serve as Lodge A president in April, 1997 and did so until October, 1997. She remains an employee of Boeing and a member of the Union.
Local 837 is divided into Lodge A and Lodge B. Each division elects officers who *1055 preside over monthly meetings at the Union Hall and administer the local affairs of the Union. The BRs sit behind the officers on the platform at the monthly meetings and the two groups work together on several union matters. Golleher states that she had daily contact with BRs in the district offices, the Union Hall and the shop floor.
Golleher claims that she was subjected to a hostile environment by the actions of a union official, William Brock ("Brock"). The alleged discrimination occurred both during her employment with the Union and during her subsequent employment with McDonnell Douglas, and later Boeing, as a member of the Union. The basis of Golleher's Title VII claims is the behavior of Local 837's BR William Brock. It is uncontested that Brock was last employed by Local 837 on September 16, 1996. This was the last date that Brock's actions could have created an unlawful employment practice towards Golleher while she was an employee of Local 837. Brock, however, was rehired by Local 837 on January 1, 1997, and allegedly continued to create a hostile environment for Golleher as a member of the union although Golleher was no longer a union employee.
Golleher claims that Brock made several sexually offensive statements to her about other female union members from July, 1995 to January, 1997. During this time, Golleher states that Brock told her that women should not hold positions of authority and that they should be at home or working for a man. Golleher claims that Brock first made a sexually derogatory comment to her, calling her a "fing bitch" and a "red-headed bitch", in December, 1996 after confronting him about a forged document in which he allegedly admitted he had participated. In January, 1997, Brock allegedly told Golleher, after she was not re-elected as BR, that the district now had "the all while male staff" it should have had all along. Golleher claims that Brock also made comments to her at union meetings and in the district offices in 1997.
During this same time period, Golleher claims that Brock made equally offensive racially derogatory statements at union meetings and in the district offices. She claims he stated he did not want a racially diverse union campaign ticket, called the black union members a variety of offensive names and stated that he would have been a leader in the Ku Klux Klan had he been born 100 years earlier.
Golleher claims that she told Brock on several occasions that she was offended my his comments and foul language. On July 7, 1997, Golleher presented a letter to union members alleging that Brock had made numerous sexually derogatory statements to her and about her, as well as racially derogatory comments. The letter was forwarded to Gerald Oulson ("Oulson"), District 837 President and Directing Business Representative ("PDBR")[2], the Union's Human Rights Committee and the officials of the International Union. Oulson conducted an investigation of Golleher's charges. Following his investigation, Oulson did not find sufficient evidence to discipline Brock. The Union claims that Oulson did, however, tell Brock that sexual and racial harassment would not be tolerated during his interview with Brock on September 5, 1997. Brock claims he was never counseled or warned about his behavior. Further, Oulson requested that the International Union send its personnel to perform sexual harassment and race discrimination training which took place on January 5, 1998. It is disputed as to whether Golleher complained to the Union about Brock on any other occasion. Golleher states that she complained to Oulson on other occasions and to Rick Smith, another Local 837 PDBR, and to the International Union.
Golleher further claims that Brock made derogatory comments to her two to three times per year in 1998 and 1999. She was *1056 no longer in a union position, and therefore, had less contact with Brock. Golleher does not allege that Brock said anything to her directly in the plant at any time nor did she complain to McDonnell Douglas or Boeing about the harassment. Golleher also does not allege that Local 837 failed or refused to file a grievance on her behalf.
She filed a Charge Questionnaire with the Equal Employment Opportunity Commission ("EEOC") on November 10, 1997 in which she alleges that a BR of Local 837 was creating a hostile environment in violation of Title VII. On January 7, 1998, Golleher filed a formal Charge of Discrimination with the EEOC. Golleher claims she sent a copy of the EEOC's determination letter to the International Union President and to Rick Smith, PDBR in January, 1999, but received no response.
Golleher claims that she suffered increasing distress, anxiety attacks, stomach problems, had difficulty sleeping, cried at work and missed days of work due to this alleged hostile environment. She also began treatment with a psychiatrist who diagnosed her with major depression and prescribed anti-depressant and anti-anxiety medications.

II. Discussion
Local 837's instant motion seeks summary judgment of the claims against it in its capacity as a union. In considering whether to grant summary judgment, a court examines all of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any ...." Fed.R.Civ.P. 56(c). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center-West Campus, 160 F.3d 484, 486 (8th Cir.1998) (citing Fed.R.Civ.P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, if any, or by citation to the pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324, 106 S.Ct. 2548.
Golleher argues that her claim is not suited for summary judgment because questions as to whether harassment was severe or pervasive, based on sex, or unwelcome are questions of fact for a jury. See Hathaway v. Runyon, 132 F.3d 1214, 1221 (8th Cir.1997); Carter v. Chrysler Corp., 173 F.3d 693, 701 (8th Cir.1999); Quick v. Donaldson Co., 90 F.3d 1372, 1377-78 (8th Cir.1996).

A. 42 U.S.C. § 2000e-2(c)(1)
The overarching issue in this case is whether Local 837's acts as a union, not as an employer, are covered under 42 U.S.C. § 2000e-2(c)(1), a subsection of Title VII.
Local 837 argues that Title VII does not regulate internal union conduct. It claims that Golleher's claim must involve some "unlawful employment practice" to fall under § 2000e-2(c)(1). Golleher argues that 42 U.S.C. § 2000e-2(c)(1) does not involve the terms, conditions or privileges of a member's employment. Golleher states that the statute merely makes it unlawful for a union to expel, exclude or otherwise discriminate against its member based on sex or race. Golleher further argues that all she is required to show is that the Union's conduct adversely affected the terms, conditions or privileges of her union membership. She claims that she was adversely affected because her participation *1057 in union matters became a "dismal and dispiriting experience" because she was subjected to a hostile environment.
Local 837 argues in its reply memorandum that subsection (c) is defining "unlawful employment practices" and therefore, must involve employment practices. The Union asserts that Golleher should have filed a claim for breach of duty of fair representation rather than a claim under Title VII. The Union further argues that Title VII was not intended to apply to internal union processes beyond exclusion or expulsion from membership because of their impact on employment opportunities. It claims there is no workplace nexus to the conduct of the Union because Golleher was not excluded or expelled from the Union, nor did she suffer any adverse employment action from McDonnell Douglas or later, from Boeing.
First, the Court finds that a claim for breach of duty of fair representation is not an exclusive remedy for claims of union misconduct. Golleher has the right to bring both a claim for breach of duty of fair representation and a claim under Title VII based on the same underlying action. Carter v. United Food & Commercial Workers, Local No. 789, 963 F.2d 1078, 1082 (8th Cir.1992); see Wright v. Over-the-Road, City Transfer Drivers, Helpers, Dockmen, Warehousemen, 945 S.W.2d 481, 500 (W.D.Mo.App.1997) (the two types of claims are not mutually exclusive). Therefore, Golleher may elect to bring only a Title VII claim against Local 837.
Second, the Court finds that Local 837's acts are covered under Title VII as a labor organization. 42 U.S.C. § 2000e-2(c)(1) states that:
It shall be an unlawful employment practice for a labor organization(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin.
The Second Circuit Court of Appeals has touched on this issue when discussing whether a labor union with fewer than 15 employees could be held liable as an employer. Yerdon v. Henry, 91 F.3d 370, 377 (2d Cir.1996). The court stated that:
"If § [2000e-2](c)(1) were read to extend to a labor organization's activities as an employer, the result would be incongruous with congressional intent: an employer with fewer than fifteen employees that, fortuitously, is also a labor union, would be liable notwithstanding that it is excluded from the statutory definition of `employer.' This result cannot be squared with the structure of § [2000e-2](c)'s mandate that a labor organization may not `otherwise discriminate' applies only to a labor union in its role as a labor union and not as an employer." Id.

It necessarily follows, therefore, that if a union is also an employer with more than 15 employees, when it acts as an employer, it is subject to liability under 42 U.S.C. § 2000e-2(a) rather than § 2000e-2(c) where labor organizations are subject to liability for their actions as a labor union. Whether a union excludes, expels, limits, segregates, or classifies its members, causes an employer to discriminate against an individual, creates a hostile environment or otherwise discriminates against one of its members, it is subject to liability as a union. See 42 U.S.C. § 2000e-2(c)(1)-(3).
The Court finds that Golleher has a cause of action under Title VII against the union as a labor organization for allegedly creating a hostile environment with regard to her union terms, conditions or privileges. The plain language of the statute compels this Court's holding. The Court also believes that this cause of action falls under the subsection entitled "unlawful employment practices" because but for her employment, Golleher would not have been a member of Local 837. The Union exists for the employees and each employee has every right to fully participate in its business and activities.
*1058 The parties did not cite to and this Court could not find any authority precluding such an action under the plain language of the statute. On the contrary, the Eighth Circuit affirmed a district court's finding that a "prima facie case of sex discrimination was established under Title VII ... which makes it unlawful for a labor union to discriminate among its members." McNail v. Amalgamated Meat Cutters & Butcher Workmen of North America, 549 F.2d 538, 542 (8th Cir.1977) (citing 42 U.S.C. § 2000e-2(c)(1)). The First Circuit analyzed a disparate impact claim as a violation of 42 U.S.C. § 2000e-2(c)(1) where a membership sponsorship policy discriminated against African-Americans and Hispanics. EEOC v. Steamship Clerks Union Local 1066, 48 F.3d 594, 600 (1st Cir.1995). The Seventh Circuit held that maintaining a seniority system which excluded Negroes from membership because of their race was a violation of 42 U.S.C. § 2000e-2(c)(1). Wattleton v. International Brotherhood of Boiler Makers, Iron Ship Builders, Blacksmiths. Forgers and Helpers, Local 1509, 686 F.2d 586, 593 (7th Cir. 1982). The Sixth Circuit found that a private cause of action existed under Title VII where a union member alleged that his union unlawfully refused him "equal opportunity to picket because of his race" in violation of 42 U.S.C. § 2000e-2(c)(1). King v. Laborers Int'l Union of North America, Union Local No. 818, 443 F.2d 273, 275 (6th Cir.1971). The Court relies on the well-settled elements of hostile work environment claims to analyze a hostile union environment claim.

B. Sexually Hostile Environment
Local 837 claims that Golleher fails to establish a cause of action for a sexually hostile environment. In Carter, the Eighth Circuit stated that "to state a claim for hostile environment harassment by non-supervisory co-workers, [plaintiff] must establish: (1) membership in a protected group; (2) the occurrence of unwelcome harassment; (3) a causal nexus between the harassment and her membership in the protected group; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action." 173 F.3d at 700. Local 837 claims that Golleher meets none of these elements as against the Union.
Although several of Brock's comments were made about Golleher and to Golleher about other women, they may serve as a background to determine the context in which Brock made his statements. Local 837 argues that the statements to others about Golleher and the statements to Golleher about others are inadmissible evidence. The Union further argues that any statements by Brock made before January, 1997 are time-barred because they occurred outside the filing period. Therefore, the Union argues that those statements are not related to the alleged misconduct which occurred while Golleher was an employee of McDonnell Douglas and later, Boeing. Golleher argues in her surreply memorandum that the Union did not assert its inadmissible evidence argument until its reply memorandum and therefore, has waived that argument. Regardless of when Local 837 made its argument, the incidents which occurred outside the 300 day filing period may be admissible as relevant background to later discriminatory acts if they are part of a continuing violation. Kimzey v. WalMart Stores, Inc., 107 F.3d 568, 572-73 (8th Cir.1997) (citing United Air Lines, Inc. v. Evans, 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977)). "Evidence of a hostile environment can constitute such a continuous violation." Id. (citations omitted). Further, evidence concerning all circumstances of Golleher's union membership should be considered in a hostile environment claim. See Id. at 573.
It is uncontroverted that Golleher is a member of a protected class as a female *1059 member of the union. Local 837 argues that Golleher cannot establish any other element of a prima facie case for a hostile environment claim.
The second element, unwelcome sexual harassment, includes sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature. 29 C.F.R. § 1604.11. However, the harassment does not necessarily have to be sexual in nature or have sexual overtones. Quick, 90 F.3d at 1377 (citations omitted). To be "unwelcome", it must merely be "uninvited and offensive." Id. at 1377-78 (citing Burns v. McGregor Electronic Industries, Inc., 989 F.2d 959, 962 (8th Cir.1993) (sexual harassment based on vulgar and offensive epithets that were intensely degrading and insulting)).
The Union claims that Brock's comments directed to Golleher were not unwelcome because Golleher participated in the workplace and Union Hall banter and testified at her deposition that she was not generally offended by profanity. Golleher argues Brock's comments were unwelcome as shown by her response to his comments. She was allegedly upset by the name-calling and comments, repeatedly asked Brock to stop and complained to union supervisors about his conduct. She argues that her occasional use of profanity and foul language does not invite sexual harassment. See Burns, 989 F.2d at 963.
Local 837 cites a recent Eighth Circuit case which held that a "plaintiff must indicate by her conduct that the alleged harassment was unwelcome" and cannot claim such behavior was unwelcome when she engaged in the conduct she complained about. Hocevar v. Purdue Frederick Co., 223 F.3d 721, 736 (8th Cir.2000). The Eighth Circuit has also held, however, that "[t]he question of whether particular conduct was unwelcome will turn largely on credibility determinations by the trier of fact." Quick, 90 F.3d at 1378 (citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 68, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).
The third element required to establish a prima facie case for a hostile environment claim is a showing that the harassment was based on sex. Plaintiff must be able to show that a causal nexus exists between the harassment and her membership in a protected group. Carter, 173 F.3d at 700. "[T]he key inquiry is whether members of one sex are exposed to disadvantageous terms or conditions ... to which members of the other sex are not exposed." Quick, 90 F.3d at 1378 (citations omitted).
Local 837 claims that Golleher cannot establish that Brock's conduct was based on sex because there was an underlying political conflict between the two co-workers which explains Brock's conduct toward Golleher. Local 837 argues that Brock's comments were not based on Golleher's sex, but his rivalry with her regarding the politics within the Union. The Eighth Circuit has held, however, that there is no excuse for subjecting another to a hostile environment "even if the harasser and the plaintiff did not like each other." Burns, 989 F.2d at 965.
Local 837 also claims Brock made comments to both men and women, but the Union fails to address Brock's statements to Golleher regarding women's misplacement in the workplace and that they should be at home or working for men. Those statements place Brock's other remarks in a different light when directed to Golleher. See Kimzey, 107 F.3d at 572-73 (evidence of acts relevant as background to assess sexual content of acts).
Golleher argues that a harasser may repeatedly use gender-based derogatory terms labeling women over a long period of time demonstrating discrimination based on sex. Carter, 173 F.3d at 700 (citing Oncale v. Sundowner Offshore Services, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). Brock allegedly called many women members "bitches," "cunts" and "whores." The Hocevar court held that the "mere use of the word `bitch' *1060 without other evidence of sex discrimination, is not particularly probative of a general misogynist attitude." 223 F.3d at 737. The instant case is distinguishable because Golleher does present "other evidence of sex discrimination" beyond Brock calling her names. Additionally, Golleher claims that saying women are inferior to men or have no place in the workplace demonstrates animosity against women. See Kerns v. Capital Graphics, Inc., 178 F.3d 1011, 1017 (8th Cir.1999) (evidence of conduct or statements to find a discriminatory attitude may include stated hostility to women being in the workplace). Golleher has alleged that Brock created a hostile environment in each of these ways. Golleher argues that merely because she and Brock were political rivals does not preclude him from harassing her based on her gender.
Next, to be actionable, the harassment must have affected a term, condition or privilege of her union membership. Local 837 argues that Golleher has not shown that Brock's comments unreasonably interfered with her work nor her ability to perform her work. Local 837 points to Golleher's deposition where she stated that she has had to miss work due to the stress of the sexual harassment, but her ability to perform her job was not interfered with while at work. Local 837 cites a 1999 case from this Court which granted summary judgment where the plaintiff testified that she was able to perform the same quality of work and that the defendant's conduct did not interfere with her work getting done. Lowry v. Powerscreen USB, 72 F.Supp.2d 1061 (E.D.Mo.1999). The Lowry Court, however, did not grant summary judgment because the plaintiff failed to show that the harassment affected a term, condition or privilege of her employment. The Court granted summary judgment because she failed to show that a causal nexus between the harassment and her membership in a protected group. Id. at 1069. The Court left open the question of whether the harassment affected her employment because she had already failed to establish a prima facie case. Id.
Golleher argues that interference with work is not a required showing for a hostile environment claim. Because this is not a hostile work environment claim, Golleher is correct in stating that interference with her work is not required. A showing of interference with her union membership terms, conditions or privileges, however, is necessary to establish a prima facie case for a hostile environment claim within the union.
Under Quick, "[t]his factor means that the [environment] is permeated with `discriminatory intimidation, ridicule and insult' that is `sufficiently severe or pervasive to alter the conditions of the victim's [membership] and create an abusive [] environment.'" 90 F.3d at 1378 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).
Local 837 argues that Golleher is not alleging severe and pervasive harassment in her work environment. Further, any alleged harassment by Brock was not severe or pervasive enough to alter Golleher's employment conditions or create a hostile environment. Golleher's employment conditions, however, are not at issue in this case. Because Local 837 is being sued in its capacity as a labor organization and not as an employer, Golleher's membership terms, conditions and privileges are at issue.
Harassing conduct is not severe and pervasive unless it is both objectively and subjectively offensive. Carter, 173 F.3d at 701-02 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787-88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). The harassment must be such that a reasonable person would find the environment hostile or abusive and the victim must actually perceive it to be so. Id. To determine the magnitude of alleged harassment, a court should look at a number of factors including the frequency and severity of the discriminatory conduct, *1061 whether it is physically threatening or humiliating or only an offensive utterance, whether it unreasonably interferes with the member's union activities, physical proximity to the harasser and the presence or absence of other people in the area. Id. Further, a "discriminatorily abusive work environment may exist where the harassment affected the employee's psychological well-being, detracted from job performance, discouraged an employee from remaining on the job, or kept the employee from advancing in his or her career." Harris, 510 U.S. at 22, 114 S.Ct. 367. In analogizing this statement to Golleher's hostile environment claim against the Union, at the very least Golleher claims the harassment allegedly affected her psychological well-being which shows that a discriminatorily abusive union environment may have existed. Golleher claims that the harassment caused her to have crying spells at work, sleeplessness, anxiety attacks and aggravation of stomach problems. Additionally, she missed days of work due to the alleged hostile environment in 1997, 1998 and 1999. She also sought psychiatric help in January, 2000 and was diagnosed with depression and was prescribed medicine.
Local 837, however, claims that Brock's conduct cannot be severe enough to create a hostile environment because Golleher only alleges "sporadic incidents of name-calling." Further, it is uncontroverted that Brock never requested sex from Golleher, never asked her for a date, nor touched her in an inappropriate way. Golleher argues that she is not required to show that she was "propositioned, touched offensively or harassed by sexual innuendo" in order to have been sexually harassed. Burns, 989 F.2d at 964-65. Intimidation and hostility may still occur and verbal abuse can amount sexual harassment. Quick, 90 F.3d at 1379.
Local 837 argues that Brock's conduct toward Golleher was not pervasive enough to create a hostile work environment. Pervasive harassment must involve more than a few isolated instances. Hocevar, 223 F.3d at 737-38 (citing Kimzey, 107 F.3d at 573). "Simple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher, 524 U.S. at 788, 118 S.Ct. 2275. Local 837 states that Brock's statements were sporadic and isolated, only one in 1996 and two to three a year from 1997 to 1999 and that Brock had very little contact with Golleher. Golleher argues, however, that Brock's conduct was pervasive because his statements to her about other women and his comments about her to others should be considered with the statements he made to her directly. The Eighth Circuit, in Smith v. St. Louis University, 109 F.3d 1261, 1264 (8th Cir.1997), considered evidence that others in plaintiff's department relayed some of the harasser's comments to her before denying defendant's motion for summary judgment. The Smith court also considered what the harasser had said about other females. Id. at 1262-63.
This conduct allegedly took place daily or several times a week for over a year while Golleher and Brock were both BRs. See Howard v. Burns Bros., 149 F.3d 835, 843 (8th Cir.1998) (plaintiff's claim of hostile environment was sent to a jury where defendant's pattern of sexual innuendo and other inappropriate conduct was chronic and continued over years, with frequent and regular notice to the manager). Additionally, Golleher claims that Brock told her several times that "women should not hold positions of authority, they should be at home or working for a man." She also claims he said that "women are too stupid to run an election" and said in her presence that "now we [the Union] have the all white male staff we should have had all along" after Golleher lost her bid for reelection as BR.
The final element to establish a prima facie case for hostile environment created by a nonsupervisory co-worker is that the Union knew or should have known *1062 about the harassment and failed to take prompt, effective remedial action. Golleher claims that she complained to two PDBRs, the Union's Human Rights Committee and the International Union and that they did not take prompt, effective remedial action. Local 837 states that Oulson, one of the PDBRs aware of the situation, investigated Golleher's complaint, but found insufficient evidence to discipline him. It is uncontroverted that Oulson spoke with Brock, but it is disputed as to whether Brock was admonished for his behavior. It is also undisputed that sexual harassment training was initiated by Oulson for all union officials. Because there is a genuine issue of material fact as to whether the Union took prompt, effective remedial action, the Court cannot decide this issue as a matter of law.

C. Racially Hostile Environment
Golleher also contends that she was subjected to a racially hostile environment in violation of Title VII.
Local 837 first argues that more than 300 days passed between the last alleged racial harassment incident and the date Golleher filed her Charge of Discrimination. In a deferral state like Missouri, in order to preserve a Title VII claim, a charge must be filed within 300 days after the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1); Dring v. McDonnell Douglas Corp., 58 F.3d at 1323, 1327 (8th Cir.1995) (discussing filing deadlines in and ADEA case which are the same in a Title VII case). Golleher's Charge filed on January 7, 1998 is within the 300 day filing period. Golleher claims that Brock made racially offensive comments in her presence at monthly meetings in the Union Hall through October, 1997 which is easily within the 300 day filing period. Additionally, Golleher argues that the continuing violation doctrine allows her to fall within the 300 day filing period. As noted above, "[e]vidence of a hostile environment can constitute such a continuous violation." Kimzey, 107 at 572-73.[3] Golleher must show that the violation continued into the limitations period. Gipson, 171 F.3d at 579.[4] Therefore, since Golleher claims that Brock's alleged racially discriminatory conduct continuously occurred before and during the 300-day filing period, she has preserved her Title VII claim.
Local 837 next argues that Golleher does not have standing to assert a hostile work environment based on race because she is a white female and was not discriminated against on the basis of her race. Golleher argues she was deeply offended and therefore, has standing to bring a claim for hostile environment injury. Golleher argues that the Eighth Circuit case, Clayton v. White Hall School Dist., 875 F.2d 676 (8th Cir.1989), allows her to bring this claim under Title VII.[5] In Clayton, a white school employee brought a racially hostile work environment claim against the school district. The court held that "Title VII protection extends to `conditions' *1063 and `privileges' of employment including the intangible benefit of a working environment free of racial discrimination." Clayton, 875 F.2d at 679. Standing requires injury in fact and whether the injury is arguably within the zone of interest of the statute. United States v. SCRAP, 412 U.S. 669, 686, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). "Injury in fact" requires the plaintiff to have a personal stake and interest in the matter. Coalition for the Environment v. Volpe, 504 F.2d 156, 165 (8th Cir.1974). Injury results under the hostile environment claim of discrimination from the "lost benefits of associating with persons of other racial groups." Clayton, 875 F.2d at 679. Further, Golleher's interest in an environment free of racial discrimination is within the zone of Title VII's protection. Id.
Again, the Court will analogize the standards used in hostile work environment claims to the present case involving a hostile union environment claim. The same standards for proving that a racially hostile environment existed are generally the same as the standards to show a sexually hostile environment existed. Gipson v. KAS, 171 F.3d 574, 578 (8th Cir.1999). Title VII protects an employee from discriminatory conduct that is so severe and pervasive that it alters the conditions of her employment and creates a hostile environment. Mems v. City of St. Paul, 224 F.3d 735, 738 (8th Cir.2000) (citing Carter, 173 F.3d at 700). "This occurs when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." White v. Honeywell, Inc., 141 F.3d 1270, 1275 (8th Cir.1998). Further, the same five elements used in Carter to determine whether a hostile environment existed are also applied for racially hostile environments. Mems, 224 F.3d at 738.
First, Golleher may be considered a member of a protected group because Title VII is not limited to minority groups and is subject to liberal construction. Clayton, 875 F.2d at 679. Standing is determined based on whether such individual was "aggrieved by such discrimination." Id. Therefore, Golleher, as the allegedly aggrieved individual, is an individual whom Title VII intended to protect thereby satisfying the first element.
Second, Golleher argues that she can show the harassment was unwelcome because she allegedly told Brock she did not like his comments. Additionally, she complained to two PDBRs, the Union's Human Rights Committee and the officers of the International Union.
Third, Golleher argues the harassment was based on race. "[R]acial epithets are often the basis of racial harassment claims, and may likewise create an inference that racial animus motivated other conduct as well." Carter, 173 F.3d at 701 (citations omitted). Golleher claims that Brock would refer to black union members as "niggers", "stupid niggers", "nigger bitches", "porch monkeys", and similar derogatory names. She claims that Brock made these and similar comments to her about the black union members on a weekly, almost daily, basis from July, 1995 to December, 1996. Brock allegedly told Golleher that he did not want a racially diverse campaign ticket and stated that they should promise offices and committee membership to black members to get their vote and then not follow through on those promises. Additionally, Golleher alleges that Brock told her that he would have been a member of the Ku Klux Klan had he been born 100 years earlier.
Fourth, Golleher must show that the harassment affected the terms, conditions or privileges of her union membership. In order to determine whether a racially hostile environment existed, the Court is required to examine the totality of the circumstances surrounding the alleged conduct, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; *1064 and whether it unreasonably interferes with an employee's work performance." Gipson, 171 F.3d at 578 (citing Harris, 510 U.S. at 23, 114 S.Ct. 367). Golleher claims that Brock made racially derogatory comments to her about the black union members on at least a weekly basis for approximately 15 months with various other derogatory statements made during the following 10 months. Golleher claims that she was deeply offended and suffered emotional distress because of Brock's racially derogatory comments. She argues this allegedly hostile environment affected the terms, conditions or privileges of her union membership. With this evidence, Golleher has "produced enough to avoid summary judgment because on such a record a factfinder could find the harassment sufficiently severe and pervasive to create liability under Title VII." Carter, 173 F.3d at 702.
Finally, Golleher must show that the union officials knew or should have known of the harassment and failed to take prompt and effective remedial action. The "promptness and adequacy" of the Union's response will often be a question of fact for the jury. Carter, 173 F.3d at 702. Local 837 has presented evidence that it responded to Golleher's complaints. The Union claims that following Golleher's letter, dated July 7, 1997, Oulson interviewed Brock and the union members who signed Golleher's letter showing their support for her complaint. On November 11, 1997, Oulson sent letters to the individuals whom he interviewed stating that he did not find sufficient evidence to discipline Brock. Oulson claims he admonished Brock for his behavior, but Brock denies that ever happened. Oulson also requested that the International Union send its personnel to perform sexual harassment and race discrimination training. The training took place on January 5, 1998.
The Court believes a genuine issue of material fact exists with regard to whether Local 837 took prompt and effective remedial action with regard to Golleher's complaint.

III. CONCLUSION
"Once there is evidence of improper conduct and subjective offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury." Howard, 149 F.3d at 840. Therefore, because the Court finds that there are several genuine issues of material fact regarding whether either a sexually hostile environment existed and whether a racially hostile environment existed, Golleher's claim survives summary judgment.
Accordingly,
IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [# 47] is DENIED.
NOTES
[1] On July 27, 2000, this Court granted Local 837's Motion for Partial Summary Judgment as to Golleher's claims against it as an employer.
[2] A PDBR has the authority to discipline a BR, suspend him or remove him from office.
[3] Further, incidents which occurred outside the 300 day filing period may also be admissible as relevant background to later discriminatory acts if they are part of a continuing violation. Kimzey, 107 at 572-73.
[4] In Gipson, however, the court found that the conduct which occurred outside the filing period was not relevant to show that a hostile environment existed and was continuing because of a lengthy break where no racially hostile conduct was alleged. 171 F.3d at 580. In this case, Golleher claims that Brock made racially offensive statements at monthly union meetings from July, 1995 to October, 1997, in the district offices several times a week from July, 1995 to December, 1996, in 1996 regarding his alleged Ku Klux Klan statement, during the election campaign in December, 1996 and reports from others in the spring and summer of 1997.
[5] A court within this circuit has also held that a white individual may bring a Title VII claim asserting her right to "work in an environment free from discrimination against African-Americans, or any other class of persons." Chandler v. Fast Lane, Inc., 868 F.Supp. 1138, 1144 (E.D.Ark.1994) (citing Clayton, 875 F.2d at 679).