# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1184

_____

David A. Johnson, on his own behalf    *
and on behalf of all others similarly    *
situated,    *
   *
       Plaintiffs - Appellants,    *
   *    Appeal from the United States
     v.    *    District Court for the Southern
   *    District of Iowa.
University of Iowa; State Board of    *
Regents; David J. Skorton, in his    *
official capacity; Douglas K. True, in    *
his official capacity; Susan Buckley, in    *
her official capacity,    *
   *
       Defendants - Appellees.    *

_____

Submitted: September 13, 2005
Filed: December 15, 2005

_____

Before MELLOY, LAY, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

David Johnson brought suit against his employer, the University of Iowa ("University"), alleging that the University's Parental Leave Policy violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, the Equal Protection Clause of the Iowa Constitution, Title VII of the Civil Rights Act of

1964, and the Iowa Civil Rights Act. The district court[1] granted summary judgment to the defendants on all claims. We affirm.

I. Background

In 2002, Johnson and his wife, Jennie Embree, were expecting a baby girl. At that time, Johnson worked full-time in the Office of the Registrar at the University, and Embree worked part-time in the University's College of Nursing. While attending a class that explained the details of the University's Parental Leave Policy, Johnson was told that he, unlike Embree, could not use accrued sick leave to be paid for absences after the birth of their daughter.

The applicable portion of the Parental Leave Policy, as contained in Chapter 22 of the Operations Manual which governs the employment of Embree and Johnson, states:

> 22.8 PARENTAL LEAVE POLICY
>
> a. Purpose. To permit parents who have care giving responsibilities to have time off to spend with a child newly added to the family and, to the extent permitted by state law, to be paid during such leave. To adapt an employee's work schedule and/or duties to help reduce conflict with parental obligations.
>
> b. Entitlement to Leave.
>
> (1) Twelve-Month Faculty, Professional, Scientific, and Non-Organized Merit System Staff.
>
> (a)    Biological mothers are entitled to leave for any period of pregnancy-related temporary disability, to be charged against accrued sick leave. Based on current medical practice, a leave of six weeks or less would not require the employee to provide

---

[1] The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

disability documentation. If an employee's accumulated sick leave is insufficient to cover the period of disability, the employee will, at the employee's request, be granted a leave of absence to be charged to vacation time, compensatory time, or a leave of absence without pay. Any request for absence beyond the period of disability is considered as a leave of absence without pay or as vacation.

(b)     A newly adoptive parent, including a domestic partner, is entitled to one week (5 days) of paid adoption leave to be charged against accrued sick leave. Departments are encouraged to arrange for additional leave as necessary. Departments should work with prospective adoptive parents seeking to adopt through an adoption agency with specific requirements for parental leave, to the extent the adoption leave is not sufficient to undertake an adoption. Time not charged to accrued sick leave may be charged to accrued vacation or taken as leave without pay.

Johnson disagreed with the class instructor's interpretation of the policy, so he sought clarification from other representatives from the University's human resources department as well as the president of the University. After being consistently told that biological fathers were not allowed to use accrued paid sick leave for absences following the birth of a child, Johnson filed a complaint with the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission. He obtained right-to-sue letters and initiated this case in the district court. He was subsequently certified to represent the class of similarly-situated biological fathers employed by the University.

Johnson argues that the University's Parental Leave Policy is discriminatory on its face because it allows biological mothers and adoptive parents to use accrued sick leave after the birth or arrival of a new child without extending a similar benefit to biological fathers. Johnson also contends that the policy is discriminatory as applied

because the University denied his request to use accrued sick leave but granted Embree's request for what Johnson deems "caregiving" leave.

## II. Standard of Review

We review the district court's grant of summary judgment de novo. <u>Charleston Hous. Auth. v. United States Dept. of Agric.</u>, 419 F.3d 729, 737 (8th Cir. 2005). Although the facts are largely undisputed in this case, the parties disagree about the exact nature of the leave the University granted to Embree. Summary judgment is still appropriate, however, when the disputed facts will not affect the outcome of the suit. <u>Dodd v. Runyon</u>, 114 F.3d 726, 729 (8th Cir. 1997). For the reasons discussed infra, we find that even if we take Johnson's characterization of Embree's leave as accurate, his claims still fail as a matter of law.

## III. Analysis

The University's Parental Leave Policy provides biological mothers and adoptive parents of both genders with the ability to use accrued paid sick leave for time away from work that is related to the addition of a child. Johnson argues that the policy is unlawful because the University does not extend this benefit to biological fathers. All of Johnson's claims of discrimination rely on this premise.

As the district court correctly noted, to determine whether biological fathers are being unlawfully discriminated against, we must separately compare them to the two groups allowed to use accrued paid sick leave: 1) biological mothers and 2) adoptive parents of both genders. We decline to adopt Johnson's repeated characterization that the Parental Leave Policy contains a "biological father exclusion." Rather, the policy

provides two different sets of benefits to two different groups.[2]  The University did not provide these benefits to Johnson because he is not a member of either group designated to receive benefits.  It did not exclude him on the basis that he is a biological father.

## A. Biological Mothers Versus Biological Fathers

The University provides biological mothers with the option of using up to six weeks of accrued paid sick leave after birth.  Although only women are eligible to receive this benefit, the policy does not necessarily present "gender-plus" discrimination.  If the leave given to biological mothers is granted due to the physical trauma they sustain giving birth, then it is conferred for a valid reason wholly separate from gender.  If the leave is instead designed to provide time to care for, and bond with, a newborn, then there is no legitimate reason for biological fathers to be denied the same benefit.  Thus, the primary question for us to consider is whether the leave given to biological mothers is in fact disability leave.

Johnson relies heavily on the Parental Leave Policy's introductory statement which says its purpose is to "permit parents who have care giving responsibilities to have time off to spend with a child newly added to the family . . . ."  Johnson also draws our attention to an "Informational Guide" produced by the University which states: "leave is for the biological mother to recover from childbirth and to spend time with the newborn child . . . ."  Although these purpose statements cloud the issue, they are not part of the operative language of the policy.[3]  The sentence that actually

---

[2] Biological mothers are allowed to use up to six weeks of accrued sick leave to cover an absence while adoptive parents can use only one week.

[3] The plaintiff's claim is expressly premised on alleged violations of Title VII and the Equal Protection Clause of the United States Constitution; it is not based on

confers the benefit at issue states: "Biological mothers are entitled to leave for any period of pregnancy-related temporary disability, to be charged against accrued sick leave." This policy language does not allow mothers to use accrued sick leave after their period of disability has ended. Thus, the period away from work constitutes disability leave, even though mothers are likely caring for their newborns during this period. Allowing biological mothers pregnancy-related disability leave on the same terms as employees with other disabilities is not only permissible, but is required by the Pregnancy Discrimination Act of 1978. Pub. L. No. 95-555, 92 Stat. 2076 (1978).

Johnson argues that the University's paid maternity leave cannot be interpreted as disability leave because the University does not require proof of a disability when the leave taken after giving birth is six weeks or less. We reject this argument because it is not unreasonable for the University to establish a period of presumptive disability so that it does not need to review medical records for each and every employee who gives birth. In support of its motion for summary judgment, the University provided testimony that a six-week period of disability after childbirth is supported by medical evidence. Although Johnson submitted Embree's affidavit claiming that she was fully recovered from childbirth after four weeks, he has offered no medical evidence indicating that the general period of recovery is less than six weeks. For all of these

---

breach of contract. In the briefs and at oral argument there was considerable discussion of the prefatory language to the policy that states the University will provide paid leave "to the extent permitted by state law." Counsel for the University acknowledged that the University could lawfully provide paid leave to biological fathers. In fact, Iowa State University, another institution under the supervision of Iowa's Board of Regents, provides the type of paid leave the plaintiff requested in this case.

Like the district court, we are troubled because the operative language of the policy seems to run counter to its prefatory language. However, like the learned district court judge, our duty is not to pass on the "fairness" of the policy, but rather to determine whether it is unconstitutional or in violation of any statute.

reasons, we find that the policy's provisions distinguishing between biological mothers and biological fathers are not facially invalid.

Johnson also contends that even if these provisions are facially valid, they are discriminatory as applied. He claims that Embree was given four weeks of medical leave and then two weeks of paid "parental leave," but that his request to take any paid leave was denied. Embree's affidavit asserts that she decided to take four weeks of medical leave and then an additional two weeks of partial leave "for the exclusive purpose of spending time with and caring for [her] newborn child." Embree's affidavit also contends that she made the reasons for her requested leave known to a supervisor.

In considering this motion for summary judgment, we must assume that Embree's assertions are accurate because "we take the non-movant's evidence as true, drawing all reasonable inferences in his or her favor." Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 964 (8th Cir. 1999). Embree's reasons for *requesting* leave are not at issue, however. We are only concerned with the University's motivation in *granting* the leave. The University required Embree to obtain a medical release before she voluntarily returned to work on a part-time basis four weeks after giving birth.[4] Johnson contends that this release proves that the subsequent two weeks of part-time leave granted to Embree were for "caregiving" purposes and not disability leave. This argument fails to consider the possibility of partial disability leave. In the fifth and sixth weeks after giving birth, Embree worked only ten hours per week. Furthermore, she worked from home. Thus, it is not a reasonable inference to assume that Embree demonstrated that she was medically cleared to return to work full-time without any restrictions, but was then still allowed to continue to take paid leave.

---

[4] This also bolsters the University's argument that it operates under the assumption that women generally need six weeks to recover from childbirth.

Even if we assume that the University did allow Embree to use accrued sick leave solely for the purpose of caring for her newborn, Johnson cannot establish that the policy was improperly applied to him in a discriminatory fashion. To demonstrate that the University's stated reasons for treating Johnson and Embree differently are pretextual–and that Johnson's gender was the real reason he was discriminated against–Johnson would have to show that he was treated differently than a "similarly situated" female employee. Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 853 (8th Cir. 2005). At the pretextual stage of the analysis, "the test for determining whether employees are similarly situated to a plaintiff is a rigorous one." Id. In this stage, the plaintiff must show that the employee who was treated differently was similarly situated to him "in all relevant respects." Id. The same requirement applies to equal protection claims. "To establish a gender-based claim under the Equal Protection Clause, the appellants must, as a threshold matter, demonstrate that they have been treated differently by a state actor than others who are similarly situated simply because appellants belong to a particular protected class." Keevan v. Smith, 100 F.3d 644, 647-48 (8th Cir. 1996).

Johnson and Embree are not similarly situated. They had different job responsibilities, worked in different departments and reported to different supervisors. Most significantly, Johnson was a full-time employee and Embree was a part-time employee. Generally, part-time employees are not similarly situated to full-time employees. See Lowery v. Hazelwood Sch. Dist., 244 F.3d 654, 660 (8th Cir. 2001). Furthermore, even if Embree and Johnson were similarly situated from an employment perspective, at the time Embree allegedly received parental leave for caregiving purposes, she was only a month removed from childbirth. Even if Embree was medically released to begin working from home on a part-time basis, the fact that she had recently gone through the physical trauma of labor is a distinguishing characteristic between her and Johnson. Accordingly, Johnson's "as applied" challenge to the biological mother classification fails.

Johnson urges us to find that the Equal Protection Clause of the Iowa Constitution provides broader protection than the Equal Protection Clause of the United States Constitution. His argument relies on Racing Ass'n of Cent. Iowa v. Fitzgerald, 675 N.W.2d 1 (Iowa 2004), in which the Iowa Supreme Court found that different tax rates on the slot machines of racetracks and river boats violated the Iowa Constitution even though the United States Supreme Court had ruled that the differing tax rates did not violate the United States Constitution. Although the Iowa Supreme Court noted that the federal constitutionality of a law is "not binding" on whether the law violates the Iowa Constitution, such a conclusion was deemed to be "persuasive." Id. at 5. For the reasons already discussed, we believe that even if the Iowa Supreme Court conducted an independent analysis of this policy under its state constitution, it would also uphold the policy.

### B. Biological Fathers v. Adoptive Parents

The Parental Leave Policy's classification allowing adoptive parents to use accrued sick leave does not discriminate on the basis of gender. It provides exactly the same benefits to adoptive fathers as to adoptive mothers. Nonetheless, Johnson argues that the policy is unlawful because it extends benefits to adoptive parents but not to biological fathers. To analyze the merits of this claim we must first determine the requisite level of scrutiny.

Johnson contends that the policy should be reviewed with strict scrutiny because it interferes with his fundamental rights of child-rearing. Although the Supreme Court has recognized a number of fundamental rights concerning parents' ability to raise their children, Johnson offers no precedent establishing that these rights include the ability to take time off from work to bond with a child. Furthermore, Johnson was allowed to take *unpaid* leave in accordance with the Family Medical Leave Act. He sued the University because he was unable to receive *paid* leave. The

United States Supreme Court has defined fundamental rights as those rights that are "deeply rooted in this Nation's history and tradition." Moore v. City of East Cleveland, 431 U.S. 494, 503 (1977). The ability to get paid leave from an employer does not fall into this category.

Because biological fathers are not a suspect class and because the right to paid leave is not fundamental, the appropriate standard of review is the rational basis test. Clayton v. White Hall Sch. Dist., 875 F.2d 676, 680 (8th Cir. 1989) (upholding a school district's policy of allowing the children of administrative employees, but not general employees, to open enroll into the district). A classification reviewed under this standard will be upheld "if it has some reasonable basis." Id. Adoptive parents face demands on their time and finances that may be significantly greater than those faced by biological parents. For example, the benefits of the University's health insurance plan offset the medical costs arising when an employee or an employee's spouse gives birth. Adoptive parents receive no such insurance benefit to offset the costs of adoption. Adoptive parents may also be required to take time off from work to deal with adoption-related administrative concerns prior to the arrival of the child.[5] Johnson may be correct that the distinctions between adoptive fathers and biological fathers are minimal. However, "[t]he process of classifying persons for benefits inevitably requires that some persons with nearly equal claims will be placed on different sides of the line, and whether the line might have been better drawn is a matter for legislative, rather than judicial, consideration." Id. at 680. Accordingly, we find that the policy provisions granting benefits to adoptive parents, like those provisions giving benefits to biological mothers, are not unlawful.

---

[5] The parties disagree as to whether the policy allows for the use of accrued sick leave to cover absences prior to the arrival of the adopted child, but this fact is not material. Even if the policy does not allow prospective adoptive parents to use accrued sick leave in this fashion, the resulting need for adoptive parents to take unpaid time off prior to the child's arrival provides a legitimate reason to make it easier for them to take paid leave after the child's arrival.

IV. Conclusion

Because we find that the leave granted to biological mothers is disability leave and that the University did not apply the policy improperly, Johnson has not established the requisite adverse treatment of biological fathers that would be necessary for his Title VII claim to survive. We analyze Johnson's Iowa Civil Rights Act claim under the same framework as the Title VII claim, so it must also fail. Henthorn v. Capitol Communications, Inc., 359 F.3d 1021, 1024 n.2 (8th Cir. 2004).

We hold that there is no fundamental right to paid leave from an employer so the policy benefits given to adoptive parents need only survive rational basis review. As the University has articulated legitimate reasons for the classifications made in the policy, the University is entitled to summary judgment on the claim under the federal Equal Protection Clause. We also conclude that the policy does not violate the Equal Protection Clause of the Iowa Constitution even though the protections provided by that clause are arguably broader than those under its federal counterpart.

For the foregoing reasons, we affirm the district court's grant of summary judgment to the defendant on all claims.

_____